ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY *v.* KITCHEN.

Opinion delivered April 10, 1911.

1. REMOVAL OF CAUSES—PRACTICE.—On a petition to remove a cause from a State to a Federal court, where it appears from the whole record, down to and including the petition for removal, that a case

is removable, then it is the duty of the State court to accept the petition and bond, and proceed no further. (Page 511.)

2.  SAME—WHAT MAY BE CONSIDERED.—In determining whether a cause should be removed to the Federal court the State court may look to the allegations of the complaint, when not in conflict with the statements of the petition for removal. (Page 511.)

3.  SAME—WHEN DENIED.—A suit brought in a State court outside of the Federal district in which the plaintiff resides is not removable on the ground of diversity of citizenship on petition of the defendant, who is a citizen and resident of another State. (Page 512.)

4.  CARRIERS—SHIPPER'S AGENT.—While a person who is carried without charge on a train in order that he may look after the property of a shipper is not technically a passenger, the carrier owes him the same duty as if he were a passenger. (Page 513.)

5.  SAME—OKLAHOMA STATUTE.—Oklahoma Compiled Laws, 1909, § 428, providing that "a carrier of persons without reward must use ordinary care and diligence for their safe carriage," refers to persons who are carried gratuitously, as on a free pass, and does not cover cases where persons are carried free in order that they may look after the property of shippers. (Page 516.)

6.  SAME—FAILURE TO FENCE RIGHT OF WAY.—A statutory requirement that a railroad company fence its right of way is intended for the protection of all persons upon railroad trains who are exposed to dangers of travel, and a person injured by reason of the omission to comply with the statute is entitled to recover on account thereof. (Page 516.)

7.  SAME—OPERATION OF TRAIN—NEGLIGENCE.—Where plaintiff's intestate was killed while riding on a freight train, which was being backed at a speed of from 12 to 15 miles per hour, it was proper for the jury to consider the speed of the train and the position of the engine in determining whether or not there was negligence in the operation of the train. (Page 517.)

8.  SAME—WHERE CONTRIBUTORY NEGLIGENCE FOR JURY.—Where a shipper's agent, riding in a freight train, which was not engaged in a regular run, was injured while upon top of the office car, the question whether he was negligent in being there was properly left to the jury if the conductor acquiesced in his being there. (Page 517.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans,* Judge; affirmed.

*W. F. Evans, T. S. Buzbee* and *B. R. Davidson,* for appellant.

1. The petition to transfer to the Federal court deprived the State court of jurisdiction. 75 Ark. 116; Dillon on Removal of Causes, § 75; 18 Enc. Pl. & Pr. 338, 341; 176 Fed. 872; 81 *Id.* 518; 47 *Id.* 530; 213 U. S. 207; 215 *Id.* 437.

2. The deceased was not a passenger, not having been accepted by any one authorized to receive passengers. Hutchinson on Car. (3 ed.) § § 997-1000; 4 Elliott on Railroads, § § 1581-2! 96 Ark. 558; 85 Ark. 504-508; 76 *Id.* 106; 178 Fed. 894-899; 176 *Id.* 519. One cannot impress or impose the obligations of a carrier of passengers on a carrier by riding on a tie train. 4 Elliott, Railroads, § § 1581-2; Hutch. on Car. (3 ed.) 1000-1; 94 Ark. 566; 111 N. W. 379; 58 S. W. 548; 153 Mass. 188; 29 N. H. 9; 149 Mass. 204; 157 Ind. 20; 63 So. Car. 46; 64 S. E. 112; 165 Fed. 408. Deceased rode on top of a freight car, and was in no sense a passenger. 165 Fed. 408; 42 S. W. 855; 58 *Id.* 548; 25 *Id.* 229; 149 Mass. 204; 40 Ark. 298-322; 16 Am. St. 520; 34 S. W. 488. He was simply a licensee, and the company owed him no duty except not to wantonly injure him. 193 U. S. 442, 449, 450; 113 *Id.* 218; 56 Ark. 281-275; 45 *Id.* 246; 165 Fed. 408.

3. The company owed deceased no duty to fence its track or keep its right of way clear of weeds or brush. 6 N. E. 448; 160 Fed. 260; 165 *Id.* 488; 35 *Id.* 43. Deceased assumed the risks. The wire gate was left open by parties in no way connected with the company. 19 A. & E. R. Cas. (N. S.) 137; *Ib.* 149. The Oklahoma statutes do not make railroads liable to one injured on a work train for failure to fence. 15 S. W. 805; 16 N. E. 448; 57 S. W. 948; 81 Fed. 133; 165 *Id.* 448.

4. There was no evidence of improper rate of speed. Pence was not competent to testify. 38 Mich. 537; 92 N. W. 639; 120 Mich. 127; 38 Mich. 537; 93 S. W. 752.

5. There was no proof that the track was unnecessarily crooked. 122 U. S. 189; 152 U. S. 153.

6. Deceased assumed all risks, not having paid fare and riding in an improper place. 8 A. & E. R. Cas. 151; 91 S. W. 460; 85 Ark. 460; 89 *Id.* 84; 93 *Id.* 153; 76 *Id.* 520; 57 *Id.* 160; 178 Fed. 432; 176 *Id.* 57; 211 U. S. 459.

7. It was error to submit to the jury whether or not a reasonably prudent man would have ridden on top of a car. 40 Ark. 298-322; 46 *Id.* 528-533; 70 *Id.* 603; 41 A. & E. R. Cas. 72; 105 S. W. 744-746; 60 Fed. 370-378; 71 Ark. 590; 41 *Id.* 542; 46 *Id.* 528; 157 Fed. 347-357.

8. It is the duty of the court to give specific instructions as to the amount of damages when asked. Juries are not lawyers to judge of the court's instructions. 93 Ala. 359; 9 So. 870; 69 Ark. 134; 141 Fed. 247; 145 *Id.* 157.

9. The train was engaged in interstate business only (175 Fed. 28); the Federal laws do not apply. 113 Fed. 508; 176 *Id.* 524; 193 W. S. 451.

*Manning & Emerson,* for appellee.

1. No grounds of removal to the Federal court were stated. Const. U. S., art. 3, § 1; Rev. St. § § 629-639 (1878); U. S. Comp. St. (1901) p. 508, § § 1, 2, 3. A suit which could not have been originally brought in the Federal court is not removable. 150 Fed. 580; 152 *Id.* 168; 155 *Id.* 68; *Id.* 499; 168 *Id.* 105; 175 *Id.* 456; 181 *Id.* 248, 255; 203 U. S. 449; 210 U. S. 366-9; 34 Cyc. 1250. Before the jurisdiction of a State court can be disturbed, it must *affirmatively* appear that a *proper* petition and bond have been presented in due time. 117 U. S. 430; 6 Sup. Ct. 799; 29 L. Ed. (U. S.) 962; 68 S. E. 920; 66 S. E. 427; 133 S. W. 38; Foster, Fed. Pro. vol. 2 (4 ed.) p. 1584; 179 Fed. 318; 113 U. S. 742-6; 131 U. S. 240; 203 U. S. 449; Loveland, App. Jur. (1911) § 338; 204 U. S. 182; 50 Ark. 388; 87 *Id.* 139; Moon, Removal of Causes, § 131; 148 Fed. 73, 694, etc.

2. This case is governed by the laws of Oklahoma, which leaves the defense of contributory negligence and assumed risks to the jury. Const. Okl. art. 23, § 6; Comp. Laws, § § 1389, 1390. The cases, 96 Ark. 558, 76 Ark. 106 and 85 *Id.* 504 are not in point. See 176 Fed. 519. Deceased was a passenger. Ray on Negl. of Imposed Duties, § 2, p. 6; 4 Elliott on Railroads, § 1578; 4 Hutchinson on Car. § 997, 1018, 1019, 1022; 2 White on Pers. Inj. on Railroads, § 561-2-8; 56 Ark. 549; 67 Ark. 47-53; 67 Ark. 389; 6 Cyc. 537; 92 S. W. 339; 79 Fed. 561; 76 Alt. 613; 10 Mo. App. 197; 17 So. 503; 142 Ga. 587; 64 S. E. 686; 243 Ill. 482; 90 N. E. 1057.

3. The railroad was required to fence its track and for failure is liable. 50 N. E. 116; 119 N. Y. 472; 23 N. E. 1051; 60 Fed. 370; 124 Mo. App. 140; 27 S. W. 476; 115 U. S. 522; 77 S. W. 439; 104 N. Y. S. 972; 110 *Id.* 507.

4. A witness need not be an expert in order to give his

opinion on the rate of speed of a train and other familiar objects. 92 N. W. 639.

5. Whether it is negligence for a train to operate backward is for the jury. 57 N. E. 640; 74 N. E. 1097.

6. Deceased assumed no risk. The acts causing the death were the negligent failure of the company to comply with the common law and statutes of Oklahoma. 93 Ark. 119; 76 *Id.* 520; 87 *Id.* 109; 83 *Id.* 22; 24 Ark. 75; 126 S. W. 76. The railroad owes the highest degree of care consistent with the practical operation of its freight trains. Cases *supra.* Riding on top of a car is not contributory negligence *per se.* 177 Fed. 44; 3 Hutch. Car. § 1196.

7. There is no error in the charge as to damages. 96 Ark. 87; 74 Ark. 259; 91 Pac. 883.

McCULLOCH, C. J. The plaintiff, Cassie Kitchen, instituted this action in the circuit court of Crawford County against defendant railroad company to recover damages resulting from the death of her husband, George T. Kitchen, which is alleged to have been caused by negligence of defendant's servants while he, the said George T. Kitchen, was riding on one of defendant's trains in the State of Oklahoma. The trial of the case resulted in a verdict in favor of plaintiff, and defendant appealed.

The first question presented is upon the ruling of the trial court in refusing to enter an order of removal to the Federal court. It is alleged in the complaint that the plaintiff is a citizen and resident of the city of Little Rock, Arkansas. This city is within the territorial jurisdiction of the United States Circuit Court for the Eastern District of Arkansas; Crawford County, where the action was pending, is in the Western District. The petition for removal filed by defendant is in regular form, and states that the petitioner "was at the time of the commencement of this suit, and still is, a resident and citizen of the State of Missouri, being a corporation created and organized under the laws of the said State of Missouri," and "that the plaintiff, Cassie Kitchen, was at the time of the commencement of this suit, and still is, a citizen and resident of the State of Arkansas."

When it appears from the whole record, down to and including the petition for removal, that a case is removable, then it is the duty of the State court to accept the petition and bond and

proceed no further. The allegations of the complaint may be looked to, when not in conflict with the statements of the petition for removal, in order to determine whether or not the case is removable. *Texarkana Tel. Co.* v. *Bridges,* 75 Ark. 116; *Burlington, etc., R. Co.* v. *Dunn,* 122 U. S. 514.

Here the statement of the complaint, in substance, that the plaintiff is a citizen and resident of the Eastern District of the Federal Court is not in conflict with the statement of the petition that the plaintiff is a citizen and resident of the State of Arkansas. For the purpose of determining the question of removability, the allegations of the complaint in this case may therefore be considered. This presents squarely the question whether or not a suit brought in a State court outside of the Federal Court district of the plaintiff's residence is removable on petition of the defendant, who is a citizen and resident of another State. · The Federal statute provides (section 1 of the act of Congress of March 3, 1887, as amended by the act of August 13, 1888) that "where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." Section 2 of the same statute, granting the right of removal, provides that "any other suit, of a civil nature, at law or in equity, of which the circuit courts of the United States are given jurisdiction by the preceding section * * * may be removed into the circuit court of the United States for the proper district by the defendant or defendants therein, being nonresidents of that State."

The contention of the defendant is that a plaintiff, by bringing suit in a district other than that of his or her residence, waives the objection on that account to a removal, and that the defendant may remove it, notwithstanding the fact that the suit has been brought in the wrong district. We think this question has been decided adversely to defendant's contention by the Supreme Court of the United States in the case of Ex parte *Wisner,* 203 U. S. 449. The decision of that court on the question is, of course, binding upon us. Learned counsel for the defendant insist that the Wisner case has been overruled by later cases, but we do not think so. The Wisner case was one where a citizen of Michigan sued a citizen of Louisiana in a court of the State of Missouri. The defendant filed a petition to remove

·the case to the Federal court. The Supreme Court of the United States decided that the case was not removable because of the fact that it could not have been instituted originally in the Federal court of that district, which was not the district of the residence of either the plaintiff or defendant. Chief Justice Fuller, in delivering the opinion of the court, said that

"In view of the intention of Congress, by the act of 1887, to contract the jurisdiction of the circuit court and of the limitations imposed thereby, jurisdiction of the suit could not have obtained, even with the consent of parties."

In later cases, In re *Moore,* 209 U. S. 490, and *Western Loan Company* v. *Butte & Boston Mining Company,* 210 U. S. 368, the above-quoted language of the Chief Justice was held to be *dictum,* and was disapproved, but the decision upon the facts disclosed was not overruled.

In the Moore case it was held to be removable on the ground that the plaintiff, after the removal into the Federal court, had appeared in that court and taken substantive steps in the case which amounted to a waiver, and the case was distinguished from the Wisner case on that point. Judge Brewer, in the opinion in the Moore case, commenting on the difference between the two cases, said that "the plaintiff in that case never consented to accept the jurisdiction of the United States court, while in this case both parties had consented by their conduct."

Following those decisions, as we understand them, we hold that the case could not be removed.

Plaintiff's husband, George T. Kitchen, was, at the time of his injury and death, a tie inspector for the Chicago, Rock Island & Pacific Railway Company, and was riding on one of defendant's trains in the State of Oklahoma, which was engaged in loading on its cars, for transportation, railroad ties along the line of its road which were the property of the Rock Island Road. As the ties were loaded for transportation, Kitchen inspected and counted them for his employer. He was allowed to ride on the train, as it traveled from place to place for the purpose of picking up the ties, but he paid no fare. This particular train did not carry passengers, but was engaged exclusively in hauling the railroad ties. There was a box-car in the train called the "office car," which was fitted up with desks, etc., for the use of the men

in their work in connection with the shipment of the ties, and also with beds where the men, including Kitchen, slept. There was also a caboose. At the time plaintiff's intestate was injured the train was backing at a speed of 12 or 15 miles per hour. The caboose was in front, and the office car next, followed by the other cars of the train, twenty-one in all, and the engine last. Kitchen and one Nelson, an employee of defendant, who was called the foreman of the tie train, were riding on top of the office car, the foreman having gone there, presumably, on account of the excessive heat of the day, and Kitchen, when he went to the top of the car, remarked to one of his companions that he thought it was the safest place to ride. The conductor of the train was in the cupola of the caboose. It was in the evening about dark, or a little before, and the backing train struck a cow and a portion of the train was derailed, the office car being completely turned over. Kitchen was caught under it and instantly killed. It is alleged in the complaint that the railroad track along that place was considerably curved, that the defendant had negligently permitted grass and weeds to grow on the right of way high enough to obscure from vision of trainmen stock straying on the right of way and track, and that the servants of the defendant were guilty of negligence and violation of the laws of the State of Oklahoma in failing to keep its right of way properly fenced, on account of which negligence the cow, which caused the derailment of the train, was permitted to stray upon the right of way and the track. Negligence is also alleged in backing the train at a high rate of speed.

It is earnestly insisted by learned counsel for defendant that Kitchen was not a passenger, and that defendant owed him no duty except the negative one not to wantonly injure him. In support of this contention they stress the fact that Kitchen did not pay any fare and was not asked to pay fare, and that, in order to constitute himself a passenger, he must have tendered himself as such to be carried upon a train dedicated to the carriage of passengers, and must have been accepted by one who was authorized to receive passengers. We do not think this contention is a sound one. According to the undisputed evidence, Kitchen was permitted to ride on the train for the purpose of performing service for his employer, the Chicago, Rock Island &

Pacific Railway Company, for whom defendant company was then engaged in transporting railroad ties. He represented his employer, the shipper, and must be treated in the same light as if he, himself, was the shipper, and, as a part of the contract of carriage, was permitted to ride for the purpose of shipping his commodity. His relations with the defendant as a carrier were much the same as that of a shipper of cattle, riding on a drover's pass, or as that of an express messenger or railway mail agent who is being transported by the carrier under contract with its employer. Under such circumstances this court, and all other courts which have passed upon the question, so far as we are advised, have held that, while such a person is not, technically, a passenger, the carrier owes him the same duty as if he were a passenger, that is to say, the highest degree of care consistent with the practical operation of the train which he accepts as the means and mode of transportation. *Little Rock & Ft. Smith Ry. Co.* v. *Miles,* 40 Ark. 298; *Fordyce* v. *Jackson,* 56 Ark. 594; *Voight* v. *B. & O. S. W. Ry. Co.,* 79 Fed. 561.

In *Fordyce* v. *Jackson, supra,* which was a case where the person injured was an express messenger, Chief Justice COCK-RILL, speaking for the court, said:

"It is true there was no express contract between the plaintiff and the railway company; but as the railway company undertook to carry him, it was bound to use every reasonable precaution to carry him safely. He could recover, therefore, in tort, just as any passenger may, for a violation of this general duty. All the cases upon this and analogous questions are to that effect."

Mr. Hutchinson says on this subject that "as a general rule, every one not an employee, being carried with the express or implied consent of the carrier upon a public conveyance usually employed in the carriage of passengers, is presumed to be a passenger." 4 Hutchinson on Carriers, § 997.

In another place the same learned author says this (sec. 1018): "It seems that if the person who is injured by the negligence of the carrier's employees is lawfully upon its conveyance, even though he is not strictly a passenger, he will be entitled, in the absence of a contract on his part to the contrary, to the same

care and diligence for his safety as when he is strictly a passenger."

Some reliance is placed, as to the degree of care, on the Oklahoma statute, which provides that "a carrier of persons without reward must use ordinary care and diligence for their safe carriage." Okla. Comp. Laws, 1909, § 428. No decision of the Oklahoma court construing that statute has been brought to our attention, but, manifestly, it could only refer to persons who are carried gratuitously, as on a free pass, and does not cover cases where persons are carried on contract, either express or implied, even though customary fare be not paid.

It is next insisted that the railroad company owed deceased no duty to fence its right of way, notwithstanding the requirement of the Oklahoma statute, and that it neither owed a duty to keep the right of way clear of weeds and brush, and that these omissions cannot be considered as the proximate cause of the injury.

It has been decided, under similar statutes, that the requirement is supposed to have been intended for the protection of all persons upon railroad trains who are exposed to dangers of travel, and that the person injured by reason of the omission to comply with the statute was entitled to recover on account thereof. *Missouri Pac. Ry. Co.* v. *Humes,* 115 U. S. 522.

Error of the court is assigned in giving the following instructions over defendant's objection:

"VI. The law requires the defendant to exercise the highest degree of care practicable in the running of its trains, both as to speed and the manner of running it with reference to the place the engine occupies in the train; and if the defendant in this case has failed to exercise that high degree of care, which is explained in these instructions, in the respect just mentioned, and this want of care caused or was one of the causes of the death of Kitchen at a time when he was exercising ordinary care for his own safety, you should find for plaintiff."

"XI. It is for you to say, among other things, whether or not Kitchen was wanting in ordinary care for his own safety, considering all the circumstances that surrounded him at the time. It is also for you to say whether or not the defendant is guilty of negligence in any of the respects assigned; that is, as

to the fence, the keeping of the right-of-way cleared, and the manner of running the train as to speed and position of the engine in the train. These are to be determined by all of the facts and circumstances in the case."

Error is also assigned in refusal of the court to give the fifth instruction requested by defendant:

"5. It is charged that the train was negligently backed in that it was backed too rapidly. I charge you that there is no evidence that would warrant you in concluding that the train was backed too rapidly. You will therefore not consider the rate of speed at which the train was moving as tending to prove negligence."

It is said that there is no evidence to show that it constituted negligence to back the train under the circumstances, and that for this reason the court erred in giving the instructions mentioned above and in refusing the one requested by defendant. It will be noted, however, that in the instructions given the court said nothing about the backing of the train, but submitted only the question as to the manner of running the train with reference to its speed and the position of the engine in the train. If we should hold that, under the evidence in this case, the question of the backing of the train was not one to be considered by the jury as an act of negligence, still there was no error in these instructions, because, under the evidence adduced, it became a question for the jury to consider the speed of the train, together with the position of the engine in the train, in determining whether or not there was negligence in the operation of the train.

The next question in the case, and one which has given the court most serious concern, is as to the contention that Kitchen was guilty of contributory negligence in riding on top of the train and that the trial court should have so declared that as a matter of law. Defendant relies upon the case of *Little Rock & F. S. Ry. Co.* v. *Miles, supra,* where, under a special finding of the jury that a shipper riding on a drover's pass was injured by reason of being on top of a car, this court held that he was guilty of contributory negligence which precluded a recovery of damages from the railroad company. Judge SMITH, in delivering the opinion in that case, said that "a passenger who voluntarily and unnecessarily rides upon the engine or the tender or

upon the pilot or bumper of the locomotive, or upon the top of
a car, or upon the platform, cannot be said to be in the exercise
of that caution and discretion which the law requires of all per-
sons who are of full age, of sound mind and of ordinary intel-
ligence."

That was a case, however, where the shipper was riding on
a train which carried him as a passenger, where a place was
provided for him to ride, and where he had, without authority
from the conductor, deserted the place set apart for the carriage
of passengers and had gone on top of the train. The facts of
the present case are vastly different. Here the train was not
carrying passengers and was not engaged on a regular run. It
was going from place to place, picking up the railroad ties, first
going backward and then forward. Those who were riding on
the train had the right, to some extent, to consider the question
of their own safety and to determine where the best place was
for them to ride for their own safety and convenience. The
foreman in charge of the train was on top of the car, and Kitchen
went there with his consent or, at least, by his acquiescence, and
the conductor was near them and acquiesced in their presence
there. In the same case Judge Smith said this:

"Another duty is to occupy a seat inside of the car provided
for passengers when a seat is to be had. The conductor is
charged with the administration of these rules, and doubtless if
the passenger rides in an improper place, for example, in the
baggage, express or postal car, or in a caboose attached to the
train or on the platform, by the conductor's permission, or with
his acquiescence, this would exempt the passenger from blame,
and in case of accident to him resulting from the company's
negligence he might recover damages."

The decision of the United States Circuit Court of Appeals
for the Sixth circuit in the case of *Winters* v. *B. & O. Ry. Co.*,
177 Fed. 44, states the controlling principle here, where, under
circumstances not dissimilar, it was held that the question should
be submitted to the jury whether or not an injured party was
guilty of negligence.

There are other alleged errors of the court pressed upon
our attention; but, on consideration, we conclude that they are
not well founded, and that they are not of sufficient importance

to call for discussion here.    Suffice it to say, that the evidence is legally sufficient to sustain the finding of the jury upon the allegations of negligence which were submitted to the jury by the court in the instructions given.    The instructions correctly submitted those questions to the jury and properly limited the consideration to the allegations of negligence which the evidence tended to sustain.

Finding no error in the record, the judgment is affirmed.