### EDDY v. CHICAGO & N. W. RY. CO. et al.

(District Court, W. D. Wisconsin. July 6, 1915.)

1. REMOVAL OF CAUSES ⬥2—STATUTORY PROVISIONS—INTENT AND HISTORY OF LEGISLATION.

Though the law of removal of causes from state to federal courts is statutory, the statutes regulating removal expressly cover only a few of the cases arising in actual practice, and the court must often disregard express words, and find the proper rule from the intent and history of the legislation on the subject.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 2, 3; Dec. Dig. ⬥2.]

2. REMOVAL OF CAUSES ⬥14—STATUTORY PROVISIONS—PROPER DISTRICT.

Under Judicial Code (Act March 3, 1911, c. 231) § 28, 36 Stat. 1094 (Comp. St. 1913, § 1010), providing for the removal of causes from state to federal courts, and declaring that they may be removed to the United States District Court for the proper district where jurisdiction depends on diversity of citizenship, and section 29 (section 1011), declaring that a party entitled to removal may file a petition for removal to the District Court to be held in the district where the suit is pending, an action by a citizen of Montana against corporations organized in and citizens of Wisconsin, brought in a state court of Minnesota, is not removable on motion of the corporations to the United States District Court sitting in Wisconsin, where jurisdiction depends on diversity of citizenship.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 35; Dec. Dig. ⬥14.]

At Law. Action by C. J. Eddy against the Chicago & Northwestern Railway Company and the Chicago, St. Paul, Minneapolis & Omaha Railway Company. On motion to remand to state court. Granted.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John A. Pearson, of St. Paul, Minn., for plaintiff.

Edgar R. Hart, of Omaha, Neb., and William T. Faricy, of St. Paul, Minn., for defendant Chicago & N. W. Ry. Co.

Richard L. Kennedy, of St. Paul, Minn., for defendant Chicago, St. P., M. & O. Ry. Co.

SANBORN, District Judge. Motion to remand. This is an action at law, brought in the district court at St. Paul, Minn., for $3,208.97 damages and interest for the alleged failure to properly transport a consignment of sheep and lambs from Columbus, Mont., and Big Timber, Mont., to Chicago, Ill. The plaintiff is a citizen of Montana, and both of the defendants are organized under the laws of Wisconsin and are citizens of that state. The defendant Omaha Company holds its stockholders' and directors' meetings in the state of its organization, but maintains offices in St. Paul, Minn., for the purpose of operating its railroad. The Chicago & Northwestern Company is organized in Wisconsin, Illinois, and Michigan, maintaining operating offices in each of those states, but holding its stockholders' and directors' meetings at Chicago, Ill.

Within a seasonable time the defendants petitioned to remove the suit into this court, and not into the District Court of the United States for the District of Minnesota. Plaintiff moved to remand, on the ground that the removal should have been made to the District Court of the district where the suit was pending, and not to the District Court of the district of Wisconsin, where the defendants are organized.

[1, 2] Defendants claim the right of removal to this district under section 28 of the Judicial Code, which provides that suits depending on diverse citizenship may be removed by the defendant therein to the District Court of the United States for the proper district, notwithstanding that section 29, regulating the practice on removal, provides that a party entitled to remove any suit mentioned in section 28 may remove such suit from a state court to the District Court of the United States to be held in the district where such suit is pending. An apparent conflict exists between the two sections, the District Court of Minnesota not being "the proper district," because by section 51 of the Judicial Code (Comp. St. 1913, § 1033) an original suit in the federal court should have been commenced only either in Montana or in Wisconsin. Had the case been removed to the district of Minnesota, it could only be retained there by the consent of the plaintiff.

By the original Judiciary Act of 1789 (Act Sept. 24, 1789, c. 20, 1 Stat. 73), thirteen judicial districts were created, some of which included more than one state or part of a state. Thus, the Maine district included that part of Massachusetts lying east of New Hampshire; the Massachusetts district being the balance of that state. By section 12 of the act it was provided that suits involving diverse citizenship might be removed from state courts to the federal Circuit Court to be held in the district where the suit was pending, or, if the District of Maine, to the District Court next to be holden therein. It was further provided that no civil suit should be brought before either

the District or the Circuit Court against an inhabitant of the United States, by any original process, in any other district than that whereof he was an inhabitant or in which he should be found at the time of serving the writ.

By the Revised Statutes the jurisdictional part of section 12 of the act of 1789 was placed in section 629 and the venue provision in section 739 without change of substance. Act March 3, 1875, c. 137, 18 Stat. 470, ignoring the arrangement of the Revised Statutes, returned to the form of the act of 1789 by placing the jurisdictional and venue provisions in the same section, and also enlarged the jurisdiction. In section 2 (Comp. St. 1913, § 1010) it was provided that suits of diverse citizenship might be removed into the Circuit Court of the United States for the proper district, thus giving the right of removal to such district as might be the proper one in view of this and other provisions of the statute. Section 3 (Comp. St. 1913, § 1011), relating to the question of removals, contained the same provision in respect to removal to the Circuit Court to be held in the district where the suit was pending as the act of 1789, and also contained the same provision as to the venue or place of suit; that is, that no civil suit should be brought, by any original process or proceeding, in any other district than that of which the defendant was an inhabitant or in which he might be found.

The acts of 1887–1888 (Act March 3, 1887, c. 373, 24 Stat. 552; Act Aug. 13, 1888, c. 866, 25 Stat. 433), restricting the federal jurisdiction, made some changes, which are substantially repeated in the Judicial Code. Suits involving diverse citizenship were to be removed into the Circuit Court for the proper district, and in the practice part of the statute it was provided, as in the case of the act of 1875, that the defendant might petition for removal to the Circuit Court of the district where such suit was pending. The venue provision was changed so as to provide that original suits should be brought in the district where the defendant was an inhabitant (omitting the provision in respect to his being found in the district), but, where the jurisdiction was founded only on the fact that the action was between citizens of different states, suit should be brought only in the district of the residence of either the plaintiff or the defendant.

It thus appears that for the first time there arose a doubt as to the construction of the words "proper district." As long as the acts of 1789 and 1875 were in force the proper district and the district where the suit was pending would be identical; but, when the act of 1887 in effect provided that the proper district should not include that in which the defendant might be found, there was, of course, a question as to whether the practice provision, providing that the defendant might petition for removal into the district where the suit was pending, should be construed so as to prevent removal into a district which was not the proper one, where the court could retain jurisdiction only with the consent of the plaintiff. The Judicial Code adopted the plan of separation of the Revised Statutes, by placing the jurisdictional provisions in section 24 (Comp. St. 1913, § 991) and those relating to venue in sections 51–57 (sections 1033–1039).

Counsel for defendants submit the following argument in favor of the right of removal into either the district of Montana, where plaintiff resides, or into the Western district of Wisconsin, where defendants are organized:

"The suit not being properly removable to the district of Minnesota, notwithstanding the provision of section 29 that it may be removed into the district where the suit is pending,[1] the question arises whether it is removable at all—whether the provision of section 28, that suits of diverse citizenship are removable to the 'proper district,' is to be entirely ignored for the reason that section 29 is inapplicable to a case like this. If the record had been filed in the Minnesota district, it is true that plaintiff might have waived objection, and allowed it to remain there, thus giving defendants an imperfect right of removal to the district where suit was pending. In re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164. Here are four statutory provisions, harmonious in themselves, but one of which is not so broad as the others. They are sections 24, 28, 29, and 51. Section 24 declares the original jurisdiction, and applies to all cases of diverse citizenship which involve a sufficient amount in dispute. Section 28 declares the right of removal to exist as to the same class, and is just as broad as section 24. These two sections deal with the general question of jurisdiction, of subject-matter, and the status of diverse citizenship. Section 51, on the other hand, deals with venue, or jurisdiction of the person, by providing that suit shall be brought only in the district of the residence of either plaintiff or defendant. This section, like the other two, broadly applies to all cases of diverse citizenship, but has no application to jurisdiction of subject-matter. This leaves only section 29, which provides how the right to remove, given by section 28, shall be exercised. It is not quite as broad as section 28, because it does not fully reach a case like the one under consideration, where neither party resides in the state or in the district where the suit sought to be removed was begun. Ex parte Wisner held that no suit which cannot properly be originally brought in a federal court can be removed thereto from a state court, and although the case has on other points been limited, it has been repeatedly affirmed as to this.[2] In re Winn, 213 U. S. 458, 464 [29 Sup. Ct. 515, 53 L. Ed. 873]; McLaughlin v. Hallowell, 228 U. S. 278, 284 [33 Sup. Ct. 465, 57 L. Ed. 835]. Section 29, therefore, may be construed in a somewhat different way from sections 24 and 28. It relates entirely to procedure. No right of removal depends upon it. It tells how to exercise a right secured by other sections, and does not apply to cases having a wrong venue so fully as it does to others. Hence the provision of section 28, giving the right of removal to the 'proper district,' may rightly be given paramount force over section 29, of more limited application, providing for removal to the district where 'the suit is pending.' One statute gives the right, and should not be considered to be limited by another statute providing how that right is to be exercised. Moreover, section 29 simply repeats language contained in the acts of 1789 and 1875, in which it was entirely consistent and without conflict. Such repetition, therefore, has not as much force as if used for the first time. The meaning of the words 'proper district,' in section 28, cannot be mistaken. Under the legislation of 1789 and 1875, they mean the district of the residence of the defendant, or the district where he was found and served. Under the legislation of 1887 and 1912, they mean the district of the residence of the plaintiff or defendant. Unless their force is entirely destroyed by section 29, when applied to the present situation, defendants had an undoubted right to remove the case, either to the Western district of Wisconsin, or to the district of Montana. It would seem to be quite illogical

---

[1] Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264.

[2] The Wisner Case and Smith v. Lyon, 133 U. S. 315 [10 Sup. Ct. 303, 33 L. Ed. 635], which is followed and approved, have led to much discussion among members of the bar, and have been criticized as confusing the distinction between jurisdiction of person and jurisdiction of subject-matter, one subject to, waiver and the other not, and as ignoring the broad distinction between jurisdiction and venue. But neither one has been overruled or disapproved by the Supreme Court.

to say that section 29 is insufficient to give any right of removal in a case like this (as in the Wisner Case), and yet in the same situation to decide it sufficient to nullify section 28."

Defendants also rely on the Mattison and Stewart Cases cited below.

As an argument based upon the history and language of the various statutes relating to jurisdiction and removal, it is a persuasive one, although it may be said that section 29, by providing that "whenever any party, entitled to remove any suit mentioned in" section 28, may desire to remove the same into the District Court of the district where the suit is pending, means to define the term "proper district" to be that where the state court suit is pending, thus making section 29 more than a practice provision, and tying together the two sections. This is the view of Judge Geiger, in Pavich v. Chicago, M. & St. P. Ry. Co., 225 Fed. 395 (Eastern District of Wisconsin, Sept. 11, 1914), and Klawa v. Chicago, M. & St. P. Ry. Co., 225 Fed. 395.

The argument quoted also ignores the provision of section 28 that in diverse citizenship cases defendant cannot remove unless he is a nonresident of the state where the suit in the state court is brought, so that if the plaintiff had sued in a Wisconsin state court there could have been no removal.

As to the meaning of the term "proper district," Chief Justice Fuller, in the dissenting opinion in the Moore Case, cited below, said:

"The proper district, within the meaning of the second clause of the second section, means either of the districts made 'proper districts' by the first section of the act; and when the third section requires the petition to be 'for the removal of such suit into a Circuit Court to be held in the district where such suit is pending' it must have been contemplated that the suit would be pending in a 'proper district.'"

But whatever may be the force of the argument in favor of removal, based upon language and history, it ignores wholly the purpose and spirit of all the removal acts. While it has often been said by the courts that the law of removals is wholly statutory, yet the express words of the statute cover only a small part of the cases arising in actual practice. It is possible for some 150 different cases of diverse citizenship and citizenship and alienage to be presented in removal cases; but the statutes expressly cover only a very few of these, the rest being left to construction. It is thus often necessary to disregard express words, and find the proper rule from the intent and history of the legislation.

When the practical effect of rulings in favor of removal to the "proper district" (especially to that of defendant's residence) in this class of cases is considered, the enormous injustice which might sometimes result is strikingly apparent. In one of the cases before Judge Geiger (Klawa v. Milwaukee Company) plaintiff was a citizen of Oregon and defendant of Wisconsin. Suit was brought in Washington, and removed to Wisconsin, whence it was remanded. If it had been retained, plaintiff must have followed it all the way to Wisconsin. Quite possibly he would have been obliged to abandon his claim altogether. No such hardship would result in this case, because it might be as easy for plaintiff to proceed in Superior or La Crosse, Wis., as in St. Paul, Minn.; but in many cases to grant removal would put

the plaintiff to great inconvenience, which would undoubtedly in some be practically prohibitive. And this enlarged jurisdiction would unjustly occur as a result of the construction of statutes intended to contract the jurisdiction. Cochran v. Montgomery Co., 199 U. S. 260, 26 Sup. Ct. 58, 50 L. Ed. 182, 4 Ann. Cas. 451. The act of 1887 was so intended, and every statute enacted by Congress since then was expressly so designed. The jurisdictional limit has been raised from $2,000 to $3,000. Suits under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]), have been denied removal. Suits by or against national banks or federal corporations do not any more ipso facto involve federal questions. The general purpose of Congress for the last 28 years to narrow the federal jurisdiction is plain. Yet in the face of all this the court is asked to retain jurisdiction in a district to which defendants would not have been entitled to removal if the action had been begun in Wisconsin.

It is obvious that it could not have been the intention of Congress to permit such a removal as this, nor has it ever expressly done so. Jurisdiction can only be retained by a construction clearly opposed to the spirit of the statutes. The federal courts have almost uniformly denied removal in doubtful cases. This is well expressed by Judge Caldwell in Fitzgerald v. Missouri Pac. R. Co. (C. C.) 45 Fed. 812. He said:

"It is urged by counsel for the defendant that, if it is doubtful whether the cause is removable, the doubt should be resolved in favor of the jurisdiction of this court. But the converse is the rule. When it is settled that the jurisdiction of the court in a removal cause is doubtful, all doubt as to what the court should do is dispelled, and the cause will be remanded. This rule is in harmony with the spirit and design of the act of Congress. Congress has gone as far as it can to diminish the evils resulting from questions of disputed or doubtful jurisdiction in such cases, by repealing the act which allowed an appeal or writ of error from an order remanding a cause. Under the existing law, an order remanding a cause eliminates the question of jurisdiction from the case, and remits it to the state court for trial upon its merits. If it turns out on the trial of the cause in the state court that it involves a federal question, and the right claimed under the federal law is denied to the party claiming it, the judgment of the state court on that question may be reviewed in the Supreme Court of the United States. But the order remanding the cause is not subject to review, and the case is finally disposed of on its merits, and the litigation ended. On the other hand, the erroneous assumption of jurisdiction in a removal cause works serious hardship. After the delay and expense incident to the preparation and trial of a case on its merits, the beaten party may take the case to the Supreme Court, where it must be reversed for want of jurisdiction, and remanded to the state court. Even the party who removes the case is not bound by his own act, but, if beaten on the merits in the Circuit Court, may appeal to the Supreme Court, and will there be heard to say that the Circuit Court erred in taking jurisdiction of the case, though it did so on his own petition: and after years of expensive litigation the parties to a suit improperly removed from the state court find themselves just where they were when the cause was removed. Everything done in the case after removal counts for nothing; the case is no nearer an end on its merits than when it was begun." In re Silvies River (D. C.) 199 Fed. 495, 503.

The presumption against the jurisdiction is not to be carried to an unreasonable extent, however, as held by the Circuit Court of Appeals of the Eighth Circuit in Boatmen's Bank v. Fritzlen, 135 Fed.

650, 655, 68 C. C. A. 288, certiorari denied 198 U. S. 586, 25 Sup. Ct. 803, 49 L. Ed. 1174. Judge Sanborn said:

"Every conscientious judge, every thoughtful man, upon whom is laid the grave responsibility and the heavy burden of determining the rights of his fellows, rejoices in the thought, wherever such is the case, that his decision may be reviewed, and that, if erroneous, it will not work irreparable injustice to him whom he deems it his duty to defeat. When a case has been removed from a state to a federal court, and a motion to remand it is made, or when a motion to remove it is presented in the first instance to the federal court, the petitioner either has or he has not the right to the trial and decision of his controversy in that court. That right is of sufficient value and gravity to be guaranteed by the Constitution and the acts of Congress. If it exists, and the Circuit Court denies its existence, and remands or refuses to remove the suit, the error is remediless, and it deprives the petitioner of his constitutional right. If the right does not exist, and the court affirms its existence and retains the suit, the error may be corrected by the Supreme Court. An error that the aggrieved party may correct is less grievous than one that is without remedy. And the true rule is that motions to remand and for removal should be decided, not by the existence of doubts, but by the preponderance of the facts, the law, and the reasons which condition them, in view of the fact that the right to invoke the jurisdiction of the federal court is a valuable constitutional right, and an erroneous affirmance of the claim to that right may be corrected by the Supreme Court upon a certificate of the question of jurisdiction, while an erroneous denial of the claim is remediless."

The state court also affirmed the right of removal, and this was approved on writ of error. Fritzlen v. Boatmen's Bank, 212 U. S. 364, 29 Sup. Ct. 366, 53 L. Ed. 551. The court say:

"So far as the separable nature of the controversy is concerned, arising on the record as it existed at the time the second application to remove was made, we might rest content with saying that we think the removal was rightly allowed, for the reasons stated in the opinion of the court below and in that of the Circuit Court of Appeals for the Eighth Circuit in Boatmen's Bank v. Fritzlen, supra, and the authorities there cited."

The question has come up in one form or another in the following cases: Those tending to sustain the right of removal to a district other than that in which suit is pending are Suydam v. Smith (N. Y.) 1 Denio, 263; Norton v. Hayes (N. Y.) 4 Denio, 245; Burck v. Taylor (C. C.) 39 Fed. 581 (affirmed generally in 152 U. S. 634, 14 Sup. Ct. 696, 38 L. Ed. 578); Mattison v. Boston & M. R. Co. (D. C.) 205 Fed. 821; Stewart v. Cybur Lumber Co. (D. C.) 211 Fed. 343; Park Square Automobile Station v. American Locomotive Co. (D. C.) 222 Fed. 979; Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co. (D. C.) 224 Fed. 566. Decisions tending to deny the right of removal into any district other than the one where suit is pending in the state court are Cobb v. Globe Mutual L. Ins. Co., 3 Hughes, 452, Fed. Cas. No. 2,921; Knowlton v. Congress & E. Spring Co., 13 Blatch. 170, Fed. Cas. No. 7,902; Murdock v. Martin (C. C.) 178 Fed. 307; Rubber & Celluloid Harness Trimming Co. v. Whiting-Adams Co. (D. C.) 210 Fed. 393; St. John v. Fidelity & Guaranty Co. (D. C.) 213 Fed. 685; Cincinnati, H. & D. R. Co. v. Orr (D. C.) 215 Fed. 261; Shawnee Nat. Bank v. Missouri, K. & T. R. Co. (C. C.) 175 Fed. 456; Pavich v. C., M. & St. P. Ry. Co., and Klawa v. C., M. & St. P. Ry. Co., 225 Fed. 395 (U. S. Dist. Court, E. D. Wis., Sept. 11, 1914); St. Louis & San

Francisco R. Co. v. Kitchen, 98 Ark. 507, 136 S. W. 970, 50 L. R. A. (N. S.) 828. The last case has a full note discussing the question, from which many of the cases cited were taken. Two decisions above cited, directly in point and reaching opposite conclusions, are Stewart v. Cybur Lumber Co. (Judge Toulmin) and St. John v. Fidelity & Guaranty Co. (Judge Rose).

The motion to remand should be granted.