### In re VADNER.

### VADNER v. VADNER et al. (PRUETT, Intervener).

(District Court, D. Nevada. November 6, 1918.)

Nos. 265, A-91.

1. REMOVAL OF CAUSES ⬤⇒79(2)—FILING PETITION—TIME.
    Under Judicial Code, § 29 (Comp. St. § 1011), a party entitled and desiring to remove the cause from state to federal court must, in the absence of waiver, file his petition before or when defendant, by the state laws or the rules of the state court, is required to plead to the complaint.

2. REMOVAL OF CAUSES ⬤⇒92—FILING RECORD IN FEDERAL COURT—EFFECT OF DELAY.
    Though, on seasonable filing in state court of petition and bond for removal of cause, jurisdiction of that court is divested, yet if entering the record in the federal court is delayed beyond the 30 days limited by Judicial Code, § 29 (Comp. St. § 1011), and no satisfactory explanation is presented, it is not improper to remand.

3. REMOVAL OF CAUSES ⬤⇒88—BOND—CONDITIONS.
    A removal bond conditioned for entering the record, not in the District Court to be held in the district where such suit is pending, but in another District Court, and to enter the record, not within 30 days after pe-

tition filed, but on the first day of the next session of the court, and so not complying with Judicial Code, § 29 (Comp. St. § 1011), is insufficient.

4. REMOVAL OF CAUSES ⬥84—WRITTEN NOTICE.

Provision of Judicial Code, § 29 (Comp. St. § 1011), that written notice of petition and bond for removal of cause shall be given the adverse party or parties prior to filing the same, is mandatory, and failure to give the notice warrants an order remanding the cause.

5. REMOVAL OF CAUSES ⬥14—PROPER FEDERAL COURT.

Under Judicial Code, § 29 (Comp. St. § 1011), the only federal court to which a suit, removable under section 28 (section 1010), is removable, is the district court for the district in which is located the state court where the suit was brought.

6. REMOVAL OF CAUSES ⬥1—CONVENIENCE OF PARTIES.

Mere convenience of parties and avoidance of expense and litigation are not grounds of federal jurisdiction, authorizing removal of cause from state to federal court.

7. REMOVAL OF CAUSES ⬥81—REVIVAL OF RIGHT.

Intervention of a party cannot revive a right of removal of the cause already lapsed, but any subsequent right of removal must be because of a separable controversy between intervener and one or more of the defendants.

8. REMOVAL OF CAUSES ⬥60—SEPARABLE CONTROVERSY—DIVERSITY OF CITIZENSHIP.

To authorize removal of cause on the ground of separable controversy, such controversy must be between a citizen of the state where the suit is brought and a defendant who is a citizen of another state.

9. REMOVAL OF CAUSES ⬥61—SEPARABLE CONTROVERSY—COMPLAINT.

Ordinarily to determine whether there is a separable controversy, as regards right of removal, the complaint is the only document to be considered.

10. REMOVAL OF CAUSES ⬥57—SEPARABLE CONTROVERSY—SETTING ASIDE CONVEYANCE.

As regards right of removal of cause, there is, in a suit against grantor and grantee to set aside a conveyance, no separable controversy between plaintiff and the grantee, but the grantor is a necessary party.

11. REMOVAL OF CAUSES ⬥87—PREJUDICE AND LOCAL INFLUENCE—AFFIDAVIT.

Petition to federal court for removal of cause from state court on the ground of prejudice and local influence should be accompanied by affidavit setting out the facts from which the prejudice and influence will be inferred.

12. REMOVAL OF CAUSES ⬥87—PREJUDICE AND LOCAL INFLUENCE—SUFFICIENCY OF SHOWING.

Showing of prejudice and local influence preventing the obtaining of justice in state court, as ground of removal of cause under Judicial Code, § 28 (Comp. St. § 1010), which must be such as to legally satisfy the court, *held* insufficient on petition alleging petitioners have been denied right to legal notice.

13. REMOVAL OF CAUSES ⬥95—PREJUDICE AND LOCAL INFLUENCE—ORDER OF FEDERAL COURT.

Where removal of cause is sought on the ground of prejudice and local influence, the state court does not lose jurisdiction till an order is filed therein from the federal court directing the removal.

14. REMOVAL OF CAUSES ⬥25(1)—SUIT UNDER FEDERAL CONSTITUTION OR LAWS—PLAINTIFF'S STATEMENT—"ARISING UNDER CONSTITUTION OR LAWS OF UNITED STATES."

A suit arises "under the Constitution or laws of the United States," within Judicial Code, § 28 (Comp. St. § 1010), as to removal of causes, only when plaintiff's statement of his own cause of action shows that it is

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

based on the one or the other; such showing may not be made by defendant's answer or petition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Arising.]

**15.** REMOVAL OF CAUSES ⊝⟿11—CAUSES REMOVABLE.

A cause cannot be removed from state to federal court unless it could originally have been brought in the federal court.

**16.** REMOVAL OF CAUSES ⊝⟿23—"FEDERAL QUESTION."

A "federal question" which will confer jurisdiction on a federal court by removal must be a question of law, not of fact, and must be a dispute as to construction of statute, constitution, or treaty.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Federal Question.]

**17.** REMOVAL OF CAUSES ⊝⟿23—FEDERAL QUESTION.

A federal question, having been decided by the national Supreme Court, ceases to be a federal question within the removal statute.

**18.** REMOVAL OF CAUSES ⊝⟿25(1)—FEDERAL QUESTION—COMPLAINTS.

Complaints merely seeking to recover a divorce, alimony, money had and received, money due on a judgment for separate maintenance, and the cancellation of conveyances as fraudulent, *held* to disclose no right of removal on the ground of federal question.

**19.** REMOVAL OF CAUSES ⊝⟿11—BANKRUPTCY AS GROUND.

A person sued in state court cannot, by filing a voluntary petition in bankruptcy and being adjudged a bankrupt, cause the suits against him to be removed to a federal court, and there tried anew.

**20.** REMOVAL OF CAUSES ⊝⟿100—REMAND—TRUSTEE IN BANKRUPTCY.

That a trustee in bankruptcy is a party to a suit removed without right from state to federal court does not prevent it being remanded.

**21.** BANKRUPTCY ⊝⟿391(3)—BANKRUPTCY COURT — PROCEEDINGS IN OTHER COURTS.

A bankruptcy court will not interfere with proceedings in another court, unless the action is one which should be stayed under the provisions of the Bankruptcy Act.

**22.** BANKRUPTCY ⊝⟿391(3)—BANKRUPTCY COURT—STAYING PROCEEDING IN STATE COURT.

Bankruptcy court has no further power to stay proceedings pending in state court than is given by Bankruptcy Act, § 11 (Comp. St. § 9595).

**23.** BANKRUPTCY ⊝⟿391(3)—BANKRUPTCY COURT—WITHDRAWAL OF PROCEEDINGS IN STATE COURT.

Bankruptcy Act, § 11 (Comp. St. § 9595), as to stay by bankruptcy court of pending proceedings in state court, does not authorize withdrawal or removal of causes from state court.

**24.** BANKRUPTCY ⊝⟿391(3)—BANKRUPTCY COURT—STAYING PROCEEDINGS IN STATE COURT.

Authority of bankruptcy court under Bankruptcy Act, § 11 (Comp. St. § 9595), to stay suits, covers only those on a claim from which a discharge in bankruptcy would be a release.

**25.** BANKRUPTCY ⊝⟿391(3)—BANKRUPTCY COURT—STAYING SUITS.

While under Bankruptcy Act, § 11 (Comp. St. § 9595), the bankruptcy court must after filing of petition in bankruptcy against a person and before adjudication or dismissal, stay pending suits against him on claims which would be released by a discharge, after adjudication continuance of the stay is discretionary; the language in the former case being "shall" and in the latter "may."

**26.** ABATEMENT AND REVIVAL ⊝⟿43—BANKRUPTCY—SUIT IN STATE COURT— DISCONTINUING PROCEEDINGS.

In the absence of an order to that effect from the bankruptcy court, a state court need not discontinue proceedings in a suit on suggestion that a

⊝⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

defendant had been adjudged a bankrupt, and this even if the claim and the judgment which would be rendered on it would be released by discharge in bankruptcy.

**27.** ABATEMENT AND REVIVAL ⊂⊃43—BANKRUPTCY—SUIT IN STATE COURT—PROSECUTION BETWEEN ADJUDICATION AND DISCHARGE.

The facts that under Bankruptcy Act, § 11b (Comp. St. § 9595), the trustee may be ordered to appear and defend actions in the state court, that under section 63a judgments rendered in state courts after adjudication may be allowed as claims against the estate, and that under section 11a the bankruptcy court has discretionary power to stay litigation, are wholly inconsistent with contention that suits pending in state court may not be prosecuted between adjudication and discharge.

**28.** ABATEMENT AND REVIVAL ⊂⊃43—BANKRUPTCY—RECOVERY OF PROPERTY—SUIT BY CREDITOR.

Bankruptcy Act, § 64b (Comp. St. § 9648), impliedly recognizes right of a creditor to begin or maintain, either before or after the petition, suit for benefit of the estate to set aside fraudulent conveyance by bankrupt, by providing that such a creditor shall be repaid out of the estate his reasonable expenses so incurred.

**29.** BANKRUPTCY ⊂⊃293(1)—BANKRUPTCY COURT—EXCLUSIVE JURISDICTION.

The exclusive jurisdiction of bankruptcy court under Bankruptcy Act, § 2 (Comp. St. § 9586), investing it with such jurisdiction at law and in equity as will enable it to exercise jurisdiction in bankruptcy proceedings, does not extend to all suits affecting a bankrupt's estate, as appears from section 23 (Comp. St. § 9607).

**30.** BANKRUPTCY ⊂⊃293(2)—JURISDICTION—FRAUDULENT AND PREFERENTIAL CONVEYANCES—"CONTROVERSIES AT LAW OR IN EQUITY."

Suits for recovery of fraudulent or preferentially conveyed property of bankrupt, in the possession of third persons claiming adversely, are not proceedings in bankruptcy, but "controversies at law or in equity," within Bankruptcy Act, § 23 (Comp. St. § 9607), as to jurisdiction.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Controversy.]

**31.** BANKRUPTCY ⊂⊃391(3)—SUIT AGAINST BANKRUPT—STAY.

Suits for recovery of fraudulently or preferentially conveyed property of bankrupt are not within Bankruptcy Act, § 11 (Comp. St. § 9595), authorizing a court of bankruptcy to stay a pending suit against a bankrupt on a claim from which a discharge in bankruptcy would be a release.

**32.** BANKRUPTCY ⊂⊃391(3), 421(5)—SUIT IN STATE COURT—STAY—ALIMONY AND MAINTENANCE.

A claim for alimony or maintenance of wife or child is not, under Bankruptcy Act, §§ 17(1), 63 (Comp. St. §§ 9601, 9647), a provable claim which a discharge in bankruptcy will release; and so a suit thereon pending in state court cannot, under section 11, be stayed subsequent to adjudication.

**33.** BANKRUPTCY ⊂⊃391(3)—ACTION FOR DIVORCE—STAY.

Relative to stay by bankruptcy court, action for divorce is not on a claim which a discharge would release.

**34.** BANKRUPTCY ⊂⊃296—SUITS AS TO PROPERTY—CONCURRENT JURISDICTION.

Under the rule of comity as to courts of coequal or concurrent authority, a state court, having first acquired jurisdiction of suit to recover property fraudulently conveyed by bankrupt, will be allowed to pursue it to the end, provided it does not invade the exclusive jurisdiction of the bankruptcy court, and provided, further, that the cause is not removable or properly removed.

**35.** BANKRUPTCY ⊂⊃296—SUIT BY TRUSTEE—FRAUDULENT CONVEYANCE BY BANKRUPT.

Bankruptcy Act, § 23 (Comp. St. § 9607), providing that suits by the trustee shall only be brought or prosecuted in the courts where bankrupt

might have brought or prosecuted them but for the bankruptcy proceedings, does not, after intervention of the trustee in a suit to avoid as fraudulent a conveyance by bankrupt, prevent the court retaining jurisdiction, as bankrupt could have brought the action, though decision would have been against him.

**36. BANKRUPTCY ⬤⟶296—SUITS IN STATE COURT—REVIEW.**

If a state court, in suits of which it has jurisdiction, to obtain divorce from bankrupt and to avoid conveyances by him as fraudulent, errs in its decree, relief should be sought in the state appellate courts; the federal district court in which bankruptcy proceedings are pending is in no sense a court of review.

**37. BANKRUPTCY ⬤⟶296—INTERVENTION.**

Persons other than bankrupt made parties defendant to suits in state court to obtain divorce from bankrupt, and to avoid as fraudulent transfers by him to them, may not intervene in the bankruptcy proceeding to relitigate the validity of the transfers and retry the cause for divorce, but as to them the cases are pending in the state court.

**38. BANKRUPTCY ⬤⟶391(3)—ENFORCEABLE JUDGMENTS AND LIENS.**

Enforcement of judgment for support of wife and children of bankrupt, rendered more than four months before bankruptcy proceeding, and lien therefor expressly created by the judgment on note and mortgage, which, pursuant to the judgment, were lodged with the clerk of the courts, will not be stayed; but otherwise as to lien created by judgment less than four months before bankruptcy proceedings, in suit to avoid as fraudulent conveyances by bankrupt.

At Law. Three suits by Agnes R. Vadner against Charles S. Vadner and others, in which W. E. Pruett, trustee of the estate of Charles S. Vadner, bankrupt, intervened, were brought in a state district court of Utah, and after consolidation were removed to the District Court of the United States in and for the District of Nevada, where bankruptcy proceedings against Charles S. Vadner were pending. Cases remanded.

Charles and Agnes Vadner were married October 1, 1895, in Massachusetts. There were born to them three children, now living, to wit, Margaret Vadner Harris, aged about 21 years; Samuel Vadner, aged about 20 years; and Ivers Vadner, aged about 14 years. In June, 1915, in the district court of the Third judicial district for the county of Salt Lake, Utah, Agnes Vadner obtained a judgment against Charles Vadner, awarding her for the separate maintenance of herself and her minor children, until further order of that court, the sum of $125 per month. She was also awarded $250 attorney's fees and $62.70 costs. It was provided in the judgment that the payment of said $125 per month be secured by, and be a lien upon, all the right, title, and interest of Charles Vadner in and to a promissory note for $8,500, bearing date Salt Lake City, Utah, July 30, 1915, signed by S. N. A. Downing and Lillian Downing, payable three years after date, with interest at 7 per cent. per annum, to said Charles Vadner, and secured by a mortgage on real property in Salt Lake county. It was also stated that the note and mortgage were then in the custody and possession of the clerk of that court. This judgment was also made a lien on all real estate situated in the state of Utah in which Charles Vadner had any interest, but specifically on the Vadner Terrace, and furniture contained in premises numbered 1098 Third avenue, Salt Lake City, Utah. Charles Vadner was restrained from disposing of, or attempting to dispose of, or incumbering any of the property described in the judgment. May 29, 1915, a few months prior to this judgment, Vadner, who was then the owner of a two-thirds interest in the said Vadner Terrace, a parcel of tenement property in Salt Lake county, Utah, then yielding a monthly rental of $300, deeded his interest to his mother, Phebe Vadner, who, August 17, 1915, deeded the same property to the Basic Fund Company, a Montana corporation,

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of which Phebe Vadner was vice president and Charles Vadner general manager. May 23, 1917, the Basic Fund Company executed a mortgage for $6,000 on its two-thirds interest in the Vadner Terrace to the estate of Samuel Vadner, deceased, Phebe Vadner and Charles Vadner, executors. Samuel Vadner was the father of Charles Vadner and the husband of Phebe Vadner. Shortly after the Downing note and mortgage had been deposited with the clerk of the Utah state court Charles Vadner executed a written assignment of an interest in the note and mortgage to Henry L. Vadnais. February 9, 1917, the Downing note and mortgage were sold at sheriff's sale, under said judgment, for $1,000 to Fisher Harris, who was then acting as the agent of Agnes Vadner. This amount was credited on the judgment. Harris had borrowed the money from the Bankers' Trust Company; he gave his note therefor, and as collateral security assigned the Downing note and mortgage to the Trust Company. Harris is the husband of Margaret, daughter of Charles and Agnes Vadner.

March 29, 1917, Agnes Vadner in said district court commenced an action against Charles Vadner, numbered 22981. The complaint is in four counts. The first is for $4,500, borrowed money, with interest thereon from June 29, 1905; the second is for $16,636.55, rents and profits arising from Agnes Vadner's separate property in Massachusetts, which amount Charles Vadner is alleged to have collected during the 15 years immediately prior to June, 1915. The third count is for $558.72, money loaned February 14, 1908; and the fourth count is also for money loaned, to wit, $65, November 25, 1908. April 30, 1917, Charles Vadner filed his answer and counterclaim, in which he asked that Agnes Vadner be adjudged to own an interest in the Downing note and mortgage to the extent of $4,500, with accrued interest at 7 per cent. from the date thereof, to wit, July 30, 1915. He admits that for about ten years prior to June, 1915, he received the rents from his wife's property in Massachusetts, averaging no more than $36 per month, all of which he alleges was paid out on her personal obligations, together with the sum of $18,000 out of his own estate; wherefore he asks judgment against Agnes Vadner for $18,000, with interest and costs. The allegations of the third and fourth counts are denied. November 9, 1917, Agnes Vadner filed an amendment to her complaint, adding a fifth count, in which she demanded judgment for $927, money loaned to Vadner in 1906; this was denied by the latter in an answer filed November 27, 1917. On the same day Vadner filed an amendment to his answer, in which he alleged that in November, 1906, he purchased for his wife, and as her agent and at her request, 235,000 shares of the capital stock of the Humboldt Mining Company for $4,700, paying for the same himself, and that no part of this sum has been repaid. In the next paragraph he alleges that the sum of $4,700 was paid by him "out of moneys of the plaintiff held by him as her agent, and not otherwise." He prays that he be given credit against the plaintiff's claim for said sum of $4,700. November 16, 1917, an amended complaint was filed, in which it was alleged that the $4,500 mentioned in the first count of the original complaint was invested by Charles Vadner in the Vadner Terrace, under an agreement that plaintiff should have an interest therein and to that extent, but that Vadner had repudiated the trust, and caused the legal title of the property to be conveyed to the Basic Fund Company, which is holding the same in secret trust for him. It was also averred that Phebe Vadner and Charles Vadner, "as executors of the estate of Samuel Vadner, deceased," and Phebe Vadner, claimed an interest in the property. The prayer is that said sum of $4,500, with the profits accruing thereon, be adjudged a lien on the Vadner Terrace superior to any claims of any of said defendants, and that said lien be foreclosed. To plaintiff's last amendment Charles Vadner filed his answer November 30, 1917.

This cause was tried by the court without a jury. December 6, 1917, the findings of fact and conclusions of law were filed, and on the same day the court rendered a judgment in favor of Agnes Vadner for the sum of $8,975, with interest thereon from date until paid. This sum was adjudged to be a specific lien on Vadner's interest in the Vadner Terrace, and it was ordered that those premises "be sold to the extent of Vadner's interest for the satisfaction of the judgment." It was further ordered that the plaintiff recover

from the defendant Vadner, on her second, third, and fourth causes of action, the sum of $9,010.78, with interest at 8 per cent. per annum from date and costs; that she recover nothing on the fifth cause of action, and that as to the impleaded defendants, Phebe Vadner and Charles S. Vadner, as executors of the last will and testament of Samuel Vadner, deceased, and Basic Fund Company, the cause be continued for appearance and further service of process. The trial commenced April 24, 1918. The plaintiff was permitted by an order of court filed November 16, 1917, to bring in the additional parties named, to wit, the Basic Fund Company, and Phebe Vadner and Charles S. Vadner, as executors of the last will and testament of Samuel Vadner, deceased.

December 18, 1917, the Basic Fund Company filed its petition for removal of case No. 22,981, in which judgment was rendered December 6, 1917, to the United States District Court of the state of Utah. The petition was verified by W. R. Hutchinson, and showed that the company was a Montana corporation, and Agnes Vadner a citizen and resident of Utah; that the Basic Fund Company was made a party defendant about November 15th, and served with summons November 28, 1917. On the same day the petition was filed an order of removal to the United States District Court for the state of Utah was entered. A further answer was filed, by Vadner, December 21, 1917, and still another on the same day, in which he appeared as one of the "executors of the estate of Samuel Vadner, deceased," averring "that said estate disclaims any interest in said described real estate." On the following day, December 22, 1917, Vadner filed his notice of motion for a new trial; and on the 30th day of the following month, January, 1918, he moved the court to modify its findings.

November 8, 1917, in the same court, Agnes Vadner commenced a divorce suit against Vadner, numbered 24,141. December 7, 1917, suit numbered 24,286 was commenced by her to set aside conveyances by Vadner as having been made to defraud his creditors.

December 12, 1917, Charles Vadner filed in the United States District Court for Nevada his petition to be declared a voluntary bankrupt, and on the following day an order of adjudication and reference was entered. In the schedules filed with the petition it is shown that his debts amounted to $10,-147.25, all of which except $37.25 were due to Agnes R. Vadner, as follows: $420 on the judgment in the separate maintenance suit; $4,500, money borrowed in June or August, 1905; $65, money borrowed in June, 1905; $525 for horse, harness, and carriage bought by Mrs. Agnes Vadner in June, 1905, for which Vadner agreed to pay; $4,500 borrowed in installments of $25 between June, 1905, and November, 1915.

The property owned by the bankrupt and scheduled by him is as follows: The Hidden Treasure No. 1, a patented mining claim in Humboldt county, Nev., valued at $700; the Downing note and mortgage for $8,500, of which an interest to the extent of $3,600 had been assigned by Vadner, September 2, 1916, to the Basic Fund Company, leaving a value to the bankrupt estate of $4,950—the assignment is still in the possession of Vadner; property claimed as exempt, consisting of books, tools, and wearing apparel, in the aggregate $220.

The schedule makes no mention of the Vadner Terrace property, or of the bankrupt's counterclaim against Agnes Vadner for $18,000, with interest thereon at the rate of 8 per cent. per annum. This counterclaim Vadner made and verified in his answer filed April 30, 1917, in the action at law above mentioned, numbered 22,981.

After the record in this cause, numbered 22,981, had been filed in the Utah federal court, the Basic Fund Company also filed therein, February 6, 1918, its answer, denying that it was a dummy corporation and a mere alias of Charles Vadner. It asserted absolute ownership of the Vadner Terrace; that it was acquired in good faith and for a valuable consideration. February 14, 1918, Charles Vadner and the Basic Fund Company presented in the federal court a plea for suspension of all further action, on the ground that Vadner had, December 13, 1917, been adjudged a voluntary bankrupt in the United States District Court for Nevada. February 13, 1918, the plaintiff

moved to remand the cause to the state court. This motion was granted March 4, 1918. March 23, 1918, Vadner's motion in the state court for a new trial was overruled, but the amount of the judgment against him was reduced by the sum of $1,910.95.

In the divorce suit, No. 24,141, the parties defendant were Charles Vadner, Henry L. Vadnais, Phebe Vadner, and the Basic Fund Company. After setting out causes of action against Charles Vadner for divorce on the ground of extreme cruelty, desertion, and failure to provide, the plaintiff alleged that Vadner then, and for many years previous, owned, and had owned, real and personal property of the aggregate value of more than $50,000, and had been, and then was, in receipt of a monthly income of about $700; that she had furnished him with many thousands of dollars, which he had retained, mingled with his own funds, and invested in other species of property, including the Downing note and mortgage and the Vadner Terrace; that the legal title to the Vadner Terrace was then held in secret trust for Vadner by the Basic Fund Company and Phebe Vadner; that Vadnais makes some claim, which is without right, to the Downing note and mortgage; and that whatever title he holds thereto is held in secret trust for Charles Vadner, all of which is in fraud of the rights of creditors and the marital rights of the plaintiff. The prayer is that the plaintiff be granted a divorce, the custody of the minor children, alimony and suit money, attorney's fees, and a suitable amount for the support, maintenance, and education of the minor children; that there be an accounting among all the parties respecting said properties; and that defendants be adjudged to have no interest therein, except as admitted in the complaint. Vadner's answer was filed November 28, 1917. In it he alleges that, for more than two years prior to the commencement of the suit, Agnes Vadner had been an actual resident of the state of Massachusetts, and for more than one year prior to the commencement of the suit he had been in the state of Nevada; that he and Agnes Vadner were duly divorced July 11, 1917, in the Sixth judicial district court of the state of Nevada for Humboldt county, in an action brought by Charles Vadner against Agnes Vadner, "as more fully appears from copies of the findings of fact, conclusions of law, judgment, and decree hereto attached and marked Exhibits 'A' and 'B.'" (No such exhibits are attached to the certified copy of the answer brought to this court.) The alleged facts constituting plaintiff's cause of action for a divorce were denied. November 28, 1917, Vadnais filed an answer, setting up the Nevada divorce proceedings, admitting that he had a claim and interest in the Downing note and mortgage, but denying that he holds such interest in secret trust for Charles Vadner, or that Phebe Vadner and the Basic Fund Company are holding other properties of Charles Vadner in trust for the latter. November 30, 1917, the answer of the Basic Fund Company was filed, in which it is alleged that defendant has no information on which to form a belief in relation to plaintiff's allegations as to the issue of the marriage, the property and income of Charles Vadner, whether he treated his wife cruelly, deserted her, or neglected to provide her with the common necessaries of life, and whether he is a fit and proper person to have the custody of the children. This answer is verified by Charles Vadner himself as general manager of the company. It seems strange he had no information as to the facts mentioned. The defendant company admits that Vadner Terrace "stands of record in the records of Salt Lake county, Utah, in the name of the said Basic Fund Company, Phebe Vadner, and the defendant C. S. Vadner."

Paragraph 13 of the complaint reads as follows:

"Said premises to a large extent, the exact extent being unknown to plaintiff but known to the defendants, were purchased and constructed with the moneys of the plaintiff, and at least two-thirds in said premises is of equity and right the property of the plaintiff and the defendant Charles S. Vadner, and, in so far as the legal title thereto is held contrary to such equitable titles, the same is held in secret trust by the said Basic Fund Company and the said Phebe Vadner."

It is admitted that Vadnais claims an interest in the Downing note, but that he holds it in secret trust for Charles Vadner is denied. In her reply, filed December 8, 1917, Agnes Vadner stated that Vadner abandoned her in

May, 1915; that during the same month she brought the action for separate maintenance; that after personal service and personal appearance of Vadner there was, as above stated, a decree awarding her $125 per month, the custody of the children, costs and counsel fees, and the use of a furnished dwelling house in Salt Lake City, then the property of Vadner; that "Vadner had never performed the said judgment except in a trifling and insubstantial part thereof"; that he has caused a mortgage on said dwelling house to be foreclosed and the premises sold, and has received the proceeds of the sale thereof; that she has continued her legal residence in Salt Lake county, Utah, though she has been temporarily absent in Massachusetts for the purpose of supporting and educating her children; that she had not been in the state of Nevada within three years prior to December 8, 1917; that the state court of Nevada for Humboldt county had had no "jurisdiction of any cause against her, nor of her person"; if any complaint filed against her in the Nevada court alleged that Charles Vadner had a residence in Nevada, or if it charged any wrongdoing or cause of action against her, it was false and untrue, and made for the purpose of fraudulently evading the effect of the judgment of the state court of Utah; and that said judgment of divorce is not entitled to full or any faith and credit, and if it exists it is contrary to the public policy of Utah.

In Agnes Vadner's suit, No. 24,286, against the said Charles S. Vadner, Basic Fund Company, a corporation, Phebe Vadner, Henry L. Vadnais, Phebe Vadner and Charles S. Vadner, as executors of the last will and testament of Samuel Vadner, deceased, and the Bankers' Trust Company, a corporation, she alleges the rendition of a judgment in her favor for $125 per month alimony and maintenance money, the deposit of the Downing note and mortgage as security for the payment thereof, a lien on said note and mortgage in favor of the Bankers' Trust Company, and a fraudulent assignment of said note and mortgage by Vadner to Henry L. Vadnais. It is further alleged that on December 4, 1917, Agnes Vadner recovered a judgment against Charles Vadner for the sum of $18,011.38, of which sum $8.975 was adjudged to be a specific lien upon the Vadner Terrace; that Charles Vadner, for the purpose of defrauding his creditors, including plaintiff, deeded his interest in the Vadner Terrace, May 29, 1915, to Phebe Vadner, and in the following August caused her to convey the same to the Basic Fund Company, and the Basic Fund Company, May 23, 1917, to execute a mortgage thereon to the estate of Samuel Vadner, deceased, for $6,000. The prayer of the complaint was that the assignment to Vadnais, and the conveyances and mortgage covering the interest in the Vadner Terrace, be set aside and held for naught; that the Bankers' Trust Company be adjudged to have a priority in the Downing note and mortgage to the extent of $1,000, and interest from February 9, 1917; that the residue of the note and mortgage, as well as Vadner's two-thirds interest in the Vadner Terrace, is subject to the payment of plaintiff's judgment of December 4, 1917. Summons was personally served on the Basic Fund Company in Utah, December 19, 1917. A receiver was appointed by the Utah state court, December 27, 1917. January 3, 1918, the Basic Fund Company filed its petition, verified by Charles Vadner, its general manager, for removal of the cause to the federal court of Utah. February 14th the plaintiff moved to remand the cause to the state court. February 15th the Basic Fund Company filed its answer in the federal court, denying that it was a dummy corporation and a mere alias of Charles Vadner, and asserted absolute ownership to the Vadner Terrace, acquired in good faith and for a valuable consideration. February 16th Vadner and the Basic Fund Company presented in the same court a plea for suspension of all further action on the ground that Vadner had been adjudged a voluntary bankrupt in the United States District Court for Nevada. February 19th the answer of the Bankers' Trust Company was filed. The motion to remand was granted March 4, 1918. April 19, 1918, the Basic Fund Company appeared in the state court and filed a petition to stay proceedings, to discharge the receiver, and to procure an order directing the latter to turn over all property in his hands to Mrs. Lillie Vadnais. The petition recites that Vadner had been adjudged a bankrupt, and W. E. Pruett appointed trustee of the bankrupt estate, and that Mrs. Vadner had

filed her claims in the bankruptcy proceedings. This petition was signed by Phebe Vadner, vice president, and attested by Charles Vadner, secretary of the company.

March 29th W. E. Pruett, trustee in the bankruptcy proceeding, filed with the referee in bankruptcy for this court a petition requesting an order authorizing and directing him to intervene in the suits in the Utah court. In his petition it is stated, on information and belief, that such litigation is being conducted by Agnes R. Vadner for the purpose of canceling certain transfers of property made by Charles S. Vadner, and, if successful, it will establish an asset belonging to the bankrupt estate. The trustee also says that in his opinion it will be for the best interests of the estate to employ Walton & Walton to represent him in such litigation; Walton & Walton were then the attorneys for Mrs. Vadner. On the same day the referee duly ordered and authorized Pruett to intervene in the suits, and to employ any competent and available attorneys of Salt Lake City. Subsequently he refused, on the petition of said Vadner, to vacate this order.

March 30, 1918, Charles Vadner filed a petition in this court, in which he recited the pendency of the various actions above mentioned; the fact that he had been adjudged a bankrupt; that the Utah state court had refused a stay of proceedings; and asked that all further proceedings in said suits, in so far as they affect the petitioner, be stayed, and that an injunction issue directed to Agnes S. Vadner, her attorneys, Walton & Walton, and her agents and servants, restraining them from further prosecuting said suits or any of them. In this petition Charles Vadner states that no service whatsoever was had in said action upon himself; but no mention is made of the fact, now apparent, that he had appeared therein on several occasions. An order was made May 9, 1918, by this court, restraining Mrs. Vadner from reducing any of the property recovered in the said suits to her own possession, or preventing any of the same from coming into the custody and control of the trustee in bankruptcy.

April 13th Phebe Vadner filed a petition here, praying that various parties in these proceedings, including W. E. Pruett, as trustee, be cited to appear and show cause why they should not be enjoined from further prosecution of any of the actions hereinabove described and mentioned in her petition, and that each of the parties be required to present to this court whatever claims or demands he may have against the bankrupt, or his claims to any property alleged to belong to the bankrupt; and that, until final determination of the bankruptcy proceedings herein, Agnes Vadner, E. A. Walton, W. E. Pruett, trustee, and their agents, servants, attorneys, and counselors, and all persons claiming through or under them, be enjoined from the further prosecution of any of said actions. Seven days later, April 20, 1918, W. E. Pruett filed a complaint in intervention in each of the above-entitled causes in the district court for Salt Lake county. April 24th the three causes came on for trial, and, on motion of the plaintiff and of the intervener, causes numbered 24141 and 22981 were consolidated into cause numbered 24286. Walton & Walton appeared for the plaintiff; Frank B. Scott appeared for the defendants other than the Bankers' Trust Company; and the Bankers' Trust Company appeared by Messrs. Dixon, Ellis & Lucas; the intervener appeared by Messrs. Booth, Lee, Badger & Rich; the defendant Henry L. Vadnais later appeared by Thomas F. Ashworth; defendants Charles S. Vadner, Basic Fund Company, and Phebe Vadner had also appeared by their respective pleadings and motions filed in person. These appearances are recited in the findings of fact filed by the court May 3d, with its conclusions of law and judgment.

The court found that Mrs. Vadner for more than one year prior to the commencement of the action had been an actual bona fide resident of Salt Lake county, Utah; that Vadner was and is the owner of real estate and personal property of the aggregate value of more than $50,000 in excess of his liabilities; that since his marriage to Agnes Vadner he had treated her in a cruel and inhuman manner; that on or about May 2, 1915, without any reasonable cause, and without fault of the plaintiff, he had willfully deserted her, and for two and a half years had willfully neglected to provide for her the com-

mon necessaries of life; that plaintiff needs an income of $250 per month to support herself, and to support and educate her minor children; that the Basic Fund Company is a mere dummy in the hands of Charles Vadner, and exists only for the purpose of holding and concealing his property; that the conveyances by which the two-thirds interest in the Vadner Terrace, formerly standing in his name, was transferred to Phebe Vadner, the Basic Fund Company, and mortgaged to the estate of Samuel Vadner, deceased, were fraudulent, and made without consideration. It was adjudged, among other things:

"(1) That the plaintiff be, and she is hereby, divorced from the defendant Charles S. Vadner, * * * and is hereby awarded the custody of the minor children of plaintiff and said defendant, * * * and that she have judgment for her alimony, support, and maintenance, and as and for a division of said defendant's property in the sum of $20,000, and $1,500 attorney's fees; said alimony and attorney's fees being in addition to any temporary allowances in that behalf heretofore made; * * * provided, however, in respect of said judgment for alimony, that whatever the plaintiff may hereafter realize as net proceeds from the Downing note and mortgage shall be credited upon the judgment for alimony. The said judgment for alimony is intended to be in addition to any sum or sums that plaintiff may realize from her judgments heretofore recovered on account of her separate property, and this judgment shall be, and is hereby made, a lien upon the undivided two-thirds interest of the Vadner Terraces hereinafter fully described, and formerly standing in the name of Charles S. Vadner, subject, however, to any lien or title which the intervener may have in and to said property.

"(2) That the Bankers' Trust Company is hereby adjudged to have a priority in the Downing note and mortgage hereinafter described as security only as securing a certain note owned by it, executed by Fisher Harris on the 9th day of February, 1917, for the sum of $1,000, with interest at the rate of 7 per cent. per annum.

"(3) That, subject to the above priority adjudged to be in the Bankers' Trust Company, the plaintiff and the intervener are, as against each and all of the other defendants, entitled to and are the owners of the aforesaid Downing note and mortgage described as follows: * * *

"(4) That the following conveyances, namely, a quitclaim deed from Charles S. Vadner to Phebe Vadner; * * * a quitclaim deed from Phebe Vadner to Basic Fund Company of said premises dated August 17, 1915, * * *; a quitclaim deed from Charles S. Vadner dated May 29, 1915, to Phebe Vadner, * * *; a quitclaim deed from Charles S. Vadner to Basic Fund Company dated March 5, 1917, * * *; a certain mortgage of Basic Fund Company to estate of Samuel Vadner, deceased, for $6,000.00, dated May 23, 1917, * * * —are each and all without consideration, voluntary, fraudulent, and void as to each and every claim of the plaintiff and the intervener herein, and are hereby set aside and held for naught; and the said property described in said conveyances and now described as follows, to wit: An undivided two-thirds interest, formerly in the name of said Charles S. Vadner, in a tract of land located in Salt Lake county, state of Utah, to wit: * * * —is hereby ordered to be subjected to the payment of those two judgments of plaintiff against Charles S. Vadner in the district court of Salt Lake county, Utah, dated December 4, 1917, the one for $8,975, with interest and $25 costs, and the other for $7,099.83, subject to any and all priority or paramount rights or titles in the intervener to said property as trustee of the bankrupt estate of said defendant Charles S. Vadner, and that as against each and all of said defendants, subject, however, to whatever equities or priorities the plaintiff may have, the said last above-described property, and the fee and title to it, is hereby vested in and awarded to the said W. E. Pruett as trustee of the estate of said Charles S. Vadner, bankrupt.

"(5) That none of said defendants has any right, title, or interest in and to said property last above described.

"(6) This judgment shall not determine as between each other the respective priorities of the plaintiff and intervener. Neither does it determine whether such matter of priority shall be determined in this court. The court

reserves the questions between the plaintiff and intervener for future consideration and determination, and the cause is in that respect held open and jurisdiction of the court reserved and the cause continued until the further order of the court in that behalf.

"(7) That plaintiff and intervener have and recover against all of the defendants except Bankers' Trust Company their costs expended and incurred as the same may be taxed."

Walton & Walton, of Salt Lake City, Utah, for plaintiff.

W. R. Hutchinson, of Salt Lake City, Utah, and Frame & Brown, of Reno, Nev., for Charles S. Vadner and Basic Fund Co.

Booth, Lee, Badger & Rich, of Salt Lake City, Utah, and A. E. Painter, of Reno, Nev., for intervener and trustee, W. E. Pruett.

FARRINGTON, District Judge (after stating the facts as above). Section 29 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1095 [Comp. St. § 1011]), defining the procedure to be followed in removing causes to this court, reads as follows:

"Whenever any party entitled to remove any suit mentioned in the last preceding section, except suits removable on the ground of prejudice or local influence, may desire to remove such suit from a state court to the district court of the United States, *he may make and file a petition*, duly verified, in such suit in such state court *at the time, or any time before the defendant is required by the laws of the state or the rule of the state court in which such suit is brought to answer or plead to the declaration or complaint* of the plaintiff, *for the removal of such suit* into the district court to be held *in the district where such suit is pending*, and shall make and *file therewith a bond*, with good and sufficient surety, *for his or their entering in such district court, within thirty days from the date of filing said petition, a certified copy of the record in such suit*, and for paying all costs that may be awarded by the said district court if said district court shall hold that such suit was wrongfully or improperly removed thereto, and also for their appearing and entering special bail in such suit if special bail was originally requisite therein. It shall then be the duty of the state court to accept said petition and bond and proceed no further in such suit. *Written notice of said petition and bond for removal shall be given the adverse party or parties prior to filing the same.* The said copy being entered within said thirty days as aforesaid in said district court of the United States, the parties so removing the said cause shall, within thirty days thereafter, plead, answer, or demur to the declaration or complaint in said cause, and the cause shall then proceed in the same manner as if it had been originally commenced in the said district court."

The removals in the present cases have been accomplished with little reference to the above-quoted section of the Code.

### FILING PETITION.

[1] A party entitled to remove his cause from a state to a federal court, and desirous of doing so, is required to file his petition before or at the time when defendant, by the laws of the state or the rules of the court in which the suit is brought, must answer or plead to the complaint. A failure to act promptly in this regard may be waived, but there is no evidence of any waiver here. In the absence of waiver, the rule is imperative. Waverly S. & G. Co. v. Waterloo, etc., Ry. Co. (D. C.) 239 Fed. 561; Kansas City R. R. Co. v. Daughtry, 138 U. S. 298, 303, 11 Sup. Ct. 306, 34 L. Ed. 963; Simpkins Fed. Suit in Eq., p. 793.

259 F.—40

Copies of the summons in the record show the defendants were required, under the Utah practice, to appear and defend within 20 days after service of summons, if service was had within Salt Lake county; otherwise within 30 days. Comp. L. of Utah 1907, § 2939.

The law case was commenced March 29th, the divorce case November 8th, and the equity case December 7th, all in 1917. In each of them Charles Vadner and the Basic Fund Company had filed answers prior to March 1, 1918. The Bankers' Trust Company in the equity case answered February 19, 1918. In the divorce case Vadnais had filed his answer in November, 1917. December 6, 1917, a partial judgment was rendered in the law case, and in all three cases, after a trial at which the parties had all appeared, judgment was rendered May 3, 1918. The petitions for removal were not filed in the Utah state court until May 10, 1918. Prior to that date the equity suit and the law case had been removed to the federal court of Utah, and remanded. An order was made in the state court consolidating the three cases, April 27, 1918. Seven days before this, Pruett, having obtained leave so to do, had filed his complaint in intervention both in the law case and in the equity case.

## FILING RECORD.

[2] Under section 29 of the Judicial Code, the record on removal should have been filed in this court on or before June 9, 1918. A portion of the record was filed here June 7th, but no bond on removal was filed in the state court until May 17th, seven days after the petitions were filed, and the bond then filed did not appear in this court until July 3d, 52 days after petitions filed. The final installment of the record was not forwarded to this court until September 20, 1918.

If a proper bond and petition are filed in the state court within the time to answer, the jurisdiction of the lower court is divested; but, in the event of delay beyond the 30 days in entering the record in the federal court, it is not improper to remand the cause, if no satisfactory explanation is presented. In this instance no excuse for the delay is offered. The petitions (paragraph 13) indicate that a bond had been executed May 10th. Waverly S. & G. Co. v. Waterloo, etc., Ry. Co. (D. C.) 239 Fed. 561, 567; St. Paul & C. Ry. Co. v. McLean, 108 U. S. 212, 2 Sup. Ct. 498, 27 L. Ed. 703.

## THE BOND.

[3] Section 29 declares that the party entitled to remove—

"may make and file a petition * * * for the removal of such suit into the district court to be held *in the district where such suit is pending,* and shall make and file therewith a bond * * * for his or their entering in such district court, within thirty days from the date of filing said petition, a certified copy of the record in such suit."

The bond filed in the present case is conditioned, not to enter the record in the district court to be held in the district where such suit is pending, but to enter it in the United States District Court for the District of Nevada. It also binds the petitioners to enter the record,

not within 30 days after petition filed, but on the first day of the next session of this court. No condition of defendants' bond is broken by failure to enter the record within the time or in the court designated by statute.

In Missouri, K. & T. Ry. v. Chappell (D. C.) 206 Fed. 688, 694, a bond similar to the one now under consideration, conditioned under the old law to file the record by the first day of the following term, was held insufficient to oust the jurisdiction of the state court. It was held that the suit as brought in the state court continued there, notwithstanding the attempted removal, because of the absence of a statutory bond; that in a proceeding to enter a default judgment the state court was acting within its powers, and that the federal court could not properly arrest by injunction the action of the parties in pursuing their remedies in the state court. The cause was remanded.

In Webb v. Southern Ry. Co., 248 Fed. 618, 160 C. C. A. 518, a removal bond conditioned to file the record, either in the district court for the district where the action was pending or in the district court for another district, was held to be insufficient by the Circuit Court of Appeals for the Fifth Circuit, and the judgment of the lower court holding to the contrary was reversed, with directions to remand the cause.

I am aware there are a number of decisions which seem to establish a different rule. For example, Chase v. Erhardt (D. C.) 198 Fed. 305, and State Imp. Dev. Co. v. Leininger (D. C.) 226 Fed. 884. But in each of those cases the petition and a defective bond were presented to the state court. The bond was there approved, and an order of removal entered; but, inasmuch as the record had been filed in the proper federal court within the 30 days, the purpose of the undertaking had been accomplished before any objection was made, and as the moving party had asked permission to amend, or to file a new bond, jurisdiction was retained.

## Written Notice.

[4] In the motion to remand, plaintiff states that no notice of the filing of any petition for removal was served on her. No evidence is furnished, by the record or otherwise, of any such service. Section 29 provides that "written notice of said petition and bond for removal shall be given the adverse party or parties prior to filing the same." This language is mandatory and imperative. Removal proceedings are purely statutory, and, unless they are had as directed in the statute, in the face of seasonable objections the state court does not lose, and the federal court does not acquire jurisdiction. It has been held in the following cases that the failure to give such notice is sufficient to warrant an order remanding the cause: Goins v. Southern Pac. Co. (D. C.) 198 Fed. 432; Loland v. Northwest Stevedore Co. (D. C.) 209 Fed. 626; Wanner v. Bissinger & Co. (D. C.) 210 Fed. 96; Arthur v. Maryland Casualty Co. (D. C.) 216 Fed. 386.

Cases cited by defendants to the contrary were decided before the passage of the act requiring notice.

## THIS IS NOT THE PROPER FEDERAL COURT.

[5] The attempted removal to the federal court of Nevada from a state court of Utah, rather than to the federal court of Utah, is a more serious matter. Section 28 of the Judicial Code (Comp. St. § 1010) confers the right of removal in certain cases. Section 29 provides the procedure on removal. The method so declared is exclusive. Section 51 (section 1033) says:

"No civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

This provision was inserted to protect persons sued in the federal court from being haled into the courts of distant states for trial of civil causes. Undoubtedly Congress, in drafting section 29, intended to guard the plaintiff from efforts on the part of the defendant to harass him by moving the cause for trial to a distant district, because, perhaps in anticipation of such litigation, the defendant had taken the precaution to establish, and thereafter to hold, his residence and citizenship in a state widely separated from the state in which he contemplated doing business. The only removals provided for in section 29 of the Judicial Code are removals to the United States District Court to be held in the district where such suit is pending. Although the decisions are not harmonious, the weight of authority sustains the view that the only federal court to which such a suit as those at bar is removable is the District Court for the district in which is located the state court where the suit was brought. Thomas v. Delta Land & Water Co., 258 Fed. 758, decided in this court August 31, 1918; Murdock v. Martin (C. C.) 178 Fed. 307; St. John v. United States F. & G. Co. (D. C.) 213 Fed. 685; Cincinnati, etc., Ry. Co. v. Orr (D. C.) 215 Fed. 261; St. John v. Taintor (D. C.) 220 Fed. 457; Eddy v. Chicago & N. W. Ry. Co. (D. C.) 226 Fed. 120; Ostrom v. Edison (D. C.) 244 Fed. 228; Webb v. Southern Ry. Co., 248 Fed. 618, 160 C. C. A. 518.

In the face of so many irregularities in the removal proceedings, the three cases have no place in this court under the federal statutes providing for the removal of causes from state to federal tribunals.

## THE CAUSES ARE NOT REMOVABLE.

Having failed to file petitions for removal to this court until after judgment had been rendered in all three cases, it is now urged that the time to commence removal proceedings must be reckoned from the date when Pruett's complaint in intervention was filed, April 20, 1918. Service was made on F. B. Scott, attorney for the Basic Fund Company, April 19th, and the petitions for removal were filed May 10th. Removal is claimed in each petition on the following grounds:

(1) To the greater number of parties concerned it would be most convenient to have the causes heard in the federal court for Nevada; great expense and unnecessary litigation will be avoided thereby. (Paragraphs 6 and 7.)

(2) A separable controversy exists between the Basic Fund Company and the plaintiff, which can be determined without the presence of any one of the other defendants. (Paragraph 11.)

(3) Local prejudice. (Paragraph 8.)

(4) The controversy arises under the Constitution and laws of the United States and the Bankruptcy Act.

## Convenience of Parties.

[6] First. The mere convenience of parties and the avoidance of expense and litigation are not grounds of federal jurisdiction.

## Separable Controversies.

[7-10] Second. The existence of a separable controversy between the trustee Pruett and the Basic Fund Company is not set up in the petition for removal, unless it be in the allegation that the trustee "has proceeded in the above-entitled cause with utter disregard to the jurisdiction of the bankruptcy court and the rights of" executors of the estate of Samuel Vadner, deceased, Basic Fund Company, and Phebe Vadner, to have their claims to the property of the bankrupt tried and determined in the bankruptcy proceedings.

Prior to the petition for removal these claimants had filed petitions in intervention, and consented to submit their claims for adjudication to this court.

The trustee in bankruptcy by intervening raised no new issues as against defendants. He joined the plaintiff in her demands, but as against her he claimed, and still claims, the fruits of the litigation. Clearly, whatever rights defendants had to removal as against Agnes Vadner were lost by delay. The intervention of the trustee could not revive a right already lapsed. If there was a right of removal as against the trustee, it must have accrued out of some controversy between him and one or more of the defendants. No such controversy is pointed out in either petition for removal, except those litigated with Agnes Vadner in the state court, and there decided before removal to this court was sought. If there be such a controversy, and it be true, as alleged in both petitions, that Charles S. Vadner, Phebe Vadner, Basic Fund Company, a corporation, Charles S. Vadner and Phebe Vadner, executors of the estate of Samuel Vadner, deceased, and W. E. Pruett, trustee in bankruptcy, all reside in the city of Reno, Washoe county, Nev., the requisite diversity of citizenship is lacking. If there is a controversy between the defendants on one side, the trustee and Mrs. Vadner on the other, then one plaintiff, Pruett, and two defendants, Vadner and Phebe Vadner, are residents of the same state. Moon on Removal of Causes, §§ 133, 134.

If the Basic Fund Company is a citizen and resident of Montana, no separable controversy exists between it and Pruett, "which can be fully determined between them without the presence of any other defendant." Ordinarily, to determine whether there is a separable controversy, the complaint is the only document to be considered. Moon on Removal of Causes, § 151; Hughes on Fed. Proc. § 120.

The only relief prayed for by Agnes Vadner or Pruett against the

Basic Fund Company is that the conveyances of the Vadner Terrace and the interest in the Downing note and mortgage to that company be set aside as fraudulent.

In an action to set aside a conveyance to which the grantor and grantee are defendants, there is no separable controversy between plaintiff and the grantee; the grantor is a necessary party. 34 Cyc. 1274; Graves v. Corbin, 132 U. S. 571, 588, 10 Sup. Ct. 196, 33 L. Ed. 462; Moore v. North River Constr. Co. (C. C.) 19 Fed. 803; Reineman v. Ball (C. C.) 33 Fed. 692; German Sav. & L. Soc. v. Dormitzer, 116 Fed. 471, 475, 53 C. C. A. 639; Beswick v. Dorris (C. C.) 174 Fed. 502, 508; Darnold v. Simpson (C. C.) 114 Fed. 368; Huneke v. Dold, 7 N. M. 5, 32 Pac. 45, 48.

In Gaylord v. Kelshaw, 1 Wall. 81, 17 L. Ed. 612, where there was a bill to set aside a conveyance as made without consideration and in fraud of creditors, it was held that the alleged fraudulent grantor was a necessary defendant, and if his citizenship was not set forth the cause must be remanded or dismissed.

Here, Pruett, the plaintiff, and Vadner, the grantor, a necessary party defendant, are citizens and residents of the same state.

If there is a controversy between Agnes Vadner and the Basic Fund Company, Charles Vadner is a necessary party thereto. It is alleged in both petitions for removal that the Basic Fund Company resides in Reno, Nev. (paragraph 6); and also that it is a Montana corporation, and a citizen and resident of that state (paragraph 11). There is no allegation in either petition as to the residence and citizenship of Agnes Vadner. An examination of the record shows she claims to be a resident and citizen of Utah. In the petition for removal in the equity case to the Utah court, Charles Vadner, December 31, 1917, swore "that the plaintiff at the time of the commencement of said suit was, and ever since said date has been, and still is, a citizen and resident of the state of Utah, and that she has been a resident and citizen since the institution of this action of the state of Utah." Four days later, in his own petition for removal of the divorce case to the Utah federal court, the said Vadner swore "that the said plaintiff at the date of the commencement of said suit (November 11, 1917) was, and still is, a citizen of the state of Massachusetts." These conflicting statements undoubtedly explain the reason why allegations as to Agnes Vadner's citizenship are omitted from the petitions for removal to this court.

The petitions for removal, in so far as reliance is based on a separable controversy in which the Basic Fund Company is defendant, are too late. The answers of that company were filed in the divorce case November 28, 1917, in the law case February 6, 1918, and in the equity case February 15, 1918. An interval of more than two and a half months elapsed before May 10th, when the petitions for removal to this court were filed. Finally, Emma Vadner in her petition in intervention filed in this court May 2, 1918, alleges that the Basic Fund Company's interest in the Vadner Terrace and the Downing note and mortgage had been duly conveyed to her before the trial in the state court, and prior to the date of the petition alleging the existence of such separable controversy.

### Prejudice and Local Influence.

[11-13] Third. Removals to the United States courts on the ground of prejudice and local influence are regulated by section 28 of the Judicial Code, which, in so far as pertinent, reads as follows:

"Where a suit is now pending, or may hereafter be brought, in any state court, in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, any defendant, being such citizen of another state, may remove such suit into the district court of the United States for the proper district, at any time before the trial thereof, *when it shall be made to appear to said district court that from prejudice or local influence he will not be able to obtain justice in such state court, or in any other state court to which the said defendant may, under the laws of the state, have the right, on account of such prejudice or local influence, to remove said cause.*"

A petition for removal on this ground may be presented to the federal court in the first instance. It should be accompanied by an affidavit setting out the facts from which the existence of prejudice or local influence will be inferred.

As said in Re Pennsylvania Co., 137 U. S. 451, 457, 11 Sup. Ct. 141, 143 (34 L. Ed. 738), the court "must be legally (not merely morally) satisfied of the truth of the allegation that, from prejudice or local influence, the defendant will not be able to obtain justice in the state court."

The allegation of the verified petition in this case is as follows:

"Petitioners further allege that because of local prejudice your petitioners have been denied the equal protection of the law, the right of due process of law, and the right to legal notice as provided for by law, of the pendency of the petition of intervention of W. E. Pruett, trustee aforesaid."

In the petition on removal it is not even alleged that the prejudice is of such a character as to prevent defendants from having a fair trial. There is nothing in the record tending in any manner to show that the state court refused to permit defendants, or any of them, to be served with notice of the pendency of Pruett's petition in intervention.

The Compiled Laws of Utah 1907, § 2925, declare that intervention is made by plaintiff "setting forth the grounds upon which the intervention rests, filed by leave of the court and served upon the parties to the action or proceeding who have not appeared, and upon the attorneys of the parties who have appeared."

It is not shown that it was the duty of the court to cause Pruett's petition to be served or notice thereof to be given. If Pruett, a citizen of Nevada, and the trustee appointed in this court, failed to serve his complaint in intervention, in the absence of an explanation it is difficult to understand how it evinces prejudice or local influence in Utah. Furthermore, the certified copies of Pruett's complaint in intervention included in the record of each case are indorsed as follows: "Copy received this 19th day of April, 1918. F. B. Scott, Attorney for Basic Fund Company." On the following day each complaint was filed in the office of the clerk of the state court.

In the findings in the consolidated cases, it is recited that Scott

appeared April 24, 1918, for the defendants other than the Bankers' Trust Company, when, on motion of plaintiff and intervener, the cases were consolidated. At that time Scott obtained a continuance for the defendants represented by him. March 23d he appeared in the divorce case as attorney for Vadner. Finally, in the bankruptcy proceedings in this district, J. M. Frame, attorney for the defendants, prior to any appearance by Pruett in the Utah court, opposed the order directing Pruett's intervention.

Where removal is sought on the ground of prejudice and local influence, the state court does not lose jurisdiction until an order is filed therein from the federal court directing the removal. Needless to say no such order has yet been filed. Pennsylvania Co. v. Bender, 148 U. S. 255, 13 Sup. Ct. 591, 37 L. Ed. 441; Tod v. Cleveland, etc., Ry. Co., 65 Fed. 145, 149, 12 C. C. A. 521.

### Federal Question.

[14-18] Fourth. In further support of their petition for removal, defendants claim that the controversy in these cases—

"arises under the Constitution and laws of the United States and the act of Congress, wherein the rights of the respective parties are to be determined under the bankruptcy act of the United States; that the trustee in bankruptcy aforesaid is an officer of the court of the United States; and that the due and regular administration of the Bankruptcy Act, and the rights of the said W. E. Pruett, trustee in bankruptcy aforesaid, under the said Bankruptcy Act, and the property of said bankrupt, and the rights of claimants thereto, is involved in the above action." Petition, par. 8.

The provision of the Removal Act invoked is contained in section 28 of the Judicial Code, and is as follows:

"Any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the District Courts of the United States are given original jurisdiction by this title, which may now be pending or which may hereafter be brought, in any state court, may be removed by the defendant or defendants therein to the district court of the United States for the proper district."

It is well settled that a suit arises under the Constitution and laws of the United States, within the meaning of the foregoing statute, only when the plaintiff's statement of his own cause of action shows that it is based on that Constitution or those laws. Spencer v. Duplan Silk Co., 191 U. S. 526, 24 Sup. Ct. 174, 48 L. Ed. 287; Austin v. Gagan (C. C.) 39 Fed. 626, 5 L. R. A. 476.

If it does not so appear, and the defendant has such a defense, he may ultimately bring it before the Supreme Court of the United States by setting it up in the state court; and if it be properly urged, and thereafter denied by the highest state court, it may then be brought to the attention of the Supreme Court of the United States on writ of error.

The defendant cannot, by allegations in his answer or petition supplementing the complaint, show a federal question which will entitle him to removal.

It is well settled that no cause can be removed from the state court to the District Court of the United States unless it could originally have been brought in the latter court. In re Winn, 213 U. S. 458, 464, 29 Sup. Ct. 515, 53 L. Ed. 873; Louisville & Nashville R. R. v. Mottley, 211 U. S. 149, 29 Sup. Ct. 42, 53 L. Ed. 126; Boston, etc., Mfg. Co. v. Montana Ore Co., 188 U. S. 632, 638, 23 Sup. Ct. 434, 47 L. Ed. 626; City of Lincoln v. Lincoln St. Ry. Co. (C. C.) 77 Fed. 658; Gold Washing & Water Co. v. Keyes, 96 U. S. 199, 24 L. Ed. 656; Montgomery's Fed. Proc. § 130.

It must necessarily follow that one who has been sued in a state court cannot thereafter in such pending suit raise a federal question by filing a voluntary petition in bankruptcy which will entitle him to a removal.

A federal question which will confer jurisdiction on a United States court by removal must be a question of law, not of fact; it must be a dispute as to the construction of the statute, or of some constitutional or treaty provision.

When a federal question has been decided by the Supreme Court of the United States it ceases to be a federal question within the meaning of the removal statute. Myrtle v. Nevada C. & O. Ry. Co. (C. C.) 137 Fed. 193.

Tested by these principles, plaintiff's pleadings disclose no right of removal on this ground. In her complaint she seeks to recover a divorce from Vadner, alimony, moneys had and received, money due on a judgment for separate maintenance, and the cancellation of alleged fraudulent conveyances. In his answers the defendant sets up judgment of divorce rendered in favor of Vadner by a Nevada court. If the Utah court failed to give full faith and credit to the Nevada judgment, the remedy was not by removal to this court, but by appeal to the Supreme Court of Utah, and thence, in the event of an adverse decision on the federal question, if there be one, by writ of error to the Supreme Court of the United States.

### Bankruptcy as a Ground for Removal.

[19, 20] Defendants place their main reliance on the fact that Vadner had been adjudged a bankrupt in this court. If this circumstance is sufficient to require the divorce case, the law case, and the equity suit to be removed to the federal court for Nevada, and each issue, notwithstanding the judgment, to be tried de novo, it is apparent that the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544) affords a method of bringing into the federal tribunals civil suits without limit. Any person, except a municipal, railroad, insurance, or banking corporation, is entitled to the benefits of the Bankruptcy Act as a voluntary bankrupt. If such a person owes debts, however small, he may file a petition. It is not necessary for him to allege or prove insolvency; and, furthermore, his petition cannot be opposed by his creditors. Can such a person, finding himself involved in litigation, in which the decision has been, or is likely to be, adverse, by filing a voluntary petition in bankruptcy, cause the suits against him to be removed to a federal court and there tried anew? If under such

circumstances the present litigation is removable from the Utah state court to the United States District Court for Nevada, what is to prevent a person who is sued in a superior court of California from residing for the greater part of the next six months in Maine, and then and there filing a petition in voluntary bankruptcy, and thus conferring on the United States District Court for Maine exclusive jurisdiction over the controversy pending in the California state court? The possible uses which might thus be made of the Bankruptcy Act are startling to contemplate.

Defendants argue that the trustee cannot ask the removal of these cases to the state court, and cite in support of that proposition the decision of Judge Seaman in Re Hadden Rodee Co. (D. C.) 135 Fed. 886.

The trustee is not seeking to remove cases from this court to the Utah state court; his position is that cases pending in that court, neither removable nor properly removed here, should be remanded.

To say that a cause in which the trustee is a party cannot be remanded after removal to this court because the trustee cannot ask it is equivalent to saying that the removability of such causes, and the jurisdiction of this court over them, is controlled by the parties opposed to the trustee.

The language quoted by counsel himself from the decision of Chief Justice Waite in Insurance Co. v. Pechner, 95 U. S. 183, 24 L. Ed. 427,

"This right of removal is statutory. Before a party can avail himself of it he must show upon the record that his is a case which comes within the provisions of the statute,"

—is apt in this connection. The question is whether the defendants have shown upon their record a right of removal. Until they do, the right to remove does not exist. Removal is a matter of grace, not of right, and the party who seeks to avail himself of the privilege must bring his case within the terms of the statute.

In the Hadden Rodee Co. Case, supra, there was no suit, at law or in equity, pending anywhere. The Merchants' & Miners' Bank filed a petition with the referee in bankruptcy, claiming certain shares of mining stock, which the custodian refused to surrender without the consent of the trustee. Judge Seaman was evidently of the opinion that the stock was in the possession or control of the trustee, and very properly held that it was not a controversy at law or in equity within the meaning of section 23 (Comp. St. § 9607), but a proceeding in bankruptcy, and overruled objections to hearing it as such a proceeding in the bankruptcy court. This authority is not in point, because it presents a matter which was clearly cognizable in the bankruptcy court as a bankruptcy proceeding. The cases now at bar were controversies at law and in equity as distinguished from proceedings in bankruptcy. The proposition that "trustee bringing suit in any state court it may be transferred to the district court" needs to be qualified by the further language of the text cited in its support, "If the necessary jurisdictional requisites exist." The trouble here is the absence of the necessary jurisdictional requisites.

PETITIONS TO STAY PROCEEDINGS IN THE STATE COURT.

[21-28] After trustee Pruett had been appointed this court was asked by Charles Vadner to direct Walton & Walton, Agnes R. Vadner, and the judge of the Utah court to cause the receiver in the Utah state court to be discharged, and all proceedings in said actions to be suspended. The petition was subsequently amended, and Judge Bramel's name omitted; but the prayer was that all proceedings in the Utah state court, in so far as they are against or affect the bankrupt, be stayed.

Similar petitions for stay were asked subsequently by the Basic Fund Company, the estate of Samuel Vadner, Emma Vadner, and Phebe Vadner.

Prior to the first of these petitions, Mr. Poujade, referee in bankruptcy, had made an order directing and authorizing the trustee, W. E. Pruett, to intervene in said suits, "and to employ any competent and available attorneys of Salt Lake City to take such action in intervention in the pending cases as may be necessary to recover any assets belonging to the estate of the bankrupt." It was also provided in that order that the reasonable and just allowances for services and expenses of such attorneys "might hereafter be allowed to them out of any property or proceeds realized from the intervention above authorized, and not otherwise." This order of the referee being approved by this court, it was ordered May 9, 1918—

"that Agnes R. Vadner be, and she hereby is, enjoined from taking any steps or proceedings in any court in Utah to reduce to her possession or control or to give her any preference or lien on any of the assets of the bankrupt in Utah, * * * but * * * she shall have the privilege of taking such action * * * as she may desire to sustain and protect the judgment rendered in the Third judicial district court in and for Salt Lake county, state of Utah, on May 3d, 1918, in which she was a party. The court reserves the right to further consider and direct what shall be done * * * relative to the assets of the bankrupt in Utah and the case hereinbefore referred to."

This conclusion was arrived at after taking into consideration the following facts:

(1) Trustee Pruett was then in possession of no funds with which to prosecute independent suits for the recovery of property in Utah, alleged to have been fraudulently transferred by Charles Vadner.

(2) According to the bankrupt's schedule, Vadner's indebtedness amounted to $10,147.25, of which all but $37.25 was admitted to be due to Agnes Vadner, the plaintiff in the suits in the state court.

(3) None of the property alleged to have been fraudulently conveyed is listed among the bankrupt's assets in the said schedule.

(4) None of the persons asking the stay are shown by the schedule to be creditors of the bankrupt.

(5) All of the persons asking a stay were or had been interested in defeating Agnes Vadner's efforts to set aside the alleged fraudulent conveyances, and, with the exception of Emma Vadner, were parties to the actions in the state court.

(6) It was announced by counsel for petitioners in open court that, unless such an order was speedily issued, actual trials in the state court would be had.

Inasmuch as there were no funds in the hands of the trustee to meet expenses of litigation, it seemed unwise to stay suits brought by Mrs. Vadner which, if successful, might result in the recovery of property sufficient to pay creditors. A court of bankruptcy will not interfere with proceedings in another court, unless the action is one which should be stayed under the provisions of the Bankruptcy Act. 7 Corpus Juris, p. 31.

The power of a court of bankruptcy to stay proceedings pending in a state court is given by, and limited in, section 11 of the Bankruptcy Act (Comp. St. § 9595), which reads as follows:

"(a) A suit which is founded upon *a claim from which a discharge would be a release*, and which is pending against a person at the time of the filing of a petition against him, *shall be stayed until after an adjudication* or the dismissal of the petition; if such person is adjudged a bankrupt, such *action may be further stayed* until twelve months after the date of such adjudication, or, if within that time such person applies for a discharge, then until the question of such discharge is determined.·

"(b) The court may order the trustee to enter his appearance and defend any pending suit against the bankrupt."

This section confers no authority to withdraw or remove causes from the state court. The authority to stay only covers those suits from which a discharge in bankruptcy would be a release. If the suit is not based on a claim for which a discharge would be a release, then it may proceed to judgment. Brandenburg on Bankr. § 1048.

During the interval which elapses after petition filed and before adjudication or dismissal, the application to stay must be granted. The language is mandatory. After adjudication, whether a stay shall be granted is discretionary with the court.

In the present case no application for a stay was made until long after the adjudication. The bankrupt, Vadner, therefore, was not entitled to a stay as a matter of right. Rogers v. Abbot, 206 Mass. 270, 92 N. E. 472, 138 Am. St. Rep. 394, 397; Rosenthal v. Nove, 175 Mass. 559, 56 N. E. 884, 78 Am. St. Rep. 512.

In the absence of any order to that effect from the bankruptcy court, the Utah state court was not bound to discontinue proceedings on suggestion that one of the defendants had been adjudged a bankrupt; it was at liberty to proceed with the causes to judgment. This would be true even though the claim, and the judgment which might be rendered thereon, would be released by discharge in bankruptcy.

In paragraph "b" of section 11 the court is empowered to authorize the trustee to enter his appearance and defend any pending suit against the bankrupt. In section 63a (Comp. St. § 9647) debts of the bankrupt may be proved and allowed against the estate—

"which are * * * (5) founded upon provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge."

"(b) Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against the estate."

The fact that the trustee may be ordered to appear and defend actions in the state court, that judgments rendered in the state courts

after adjudication may be allowed as claims against the estate, and the discretionary power of the bankruptcy court to stay litigation, are wholly inconsistent with the contention that suits pending in the state court may not be prosecuted during the period between adjudication and discharge.

In the Buchanan Case, 219 Fed. 492, 135 C. C. A. 204, creditors, prior to bankruptcy, had commenced four suits in the New York state courts to reach that portion of the income of certain trust funds which was in excess of what was necessary for the bankrupt's support. When the involuntary petition was filed these suits were stayed; after adjudication the stay order was vacated. The Circuit Court of Appeals held that it was not improper for the bankruptcy court to allow these suits to be prosecuted to judgment, as this would be a convenient way of liquidating the creditors' claims, the amount of which was in dispute. It was further provided that the prosecution of the suits beyond judgment could not be permitted.

In Re Klein (D. C.) 97 Fed. 31, an action in the state court was stayed by the federal court in order to enable the creditors after adjudication to choose a trustee, and to give him time to intervene for the protection of whatever rights the general creditors might have in the funds then in the hands of the receiver appointed by the court. This restraining order was continued for five days for that purpose, and then dissolved.

In Atkins v. Globe Bank & Trust Co. (Ky.) 124 S. W. 879, within four months before Atkins was adjudged a bankrupt a number of suits were brought by creditors, seeking to avoid conveyances made by Atkins to members of his family in fraud of creditors. It was held that the trustee had the right, when so authorized by the bankruptcy court, to be substituted as plaintiff in any suits brought by creditors of the bankrupt in the state court for the purpose of recovering the property fraudulently conveyed by the bankrupt, and to the proceeds of which the trustee was entitled. The trial court had refused to permit such a substitution, but did not undertake to dispose of the property recovered. The Supreme Court directed the lower court to order the proceeds to be paid over to the trustee in bankruptcy, to be administered as a part of the bankrupt's estate in the bankruptcy court.

Section 64b of the Bankruptcy Act (Comp. St. § 9648) impliedly recognizes the right of a creditor to begin or maintain such a suit for the benefit of the estate, either before or after the petition, by providing that such a creditor shall be repaid out of the bankrupt estate his reasonable expenses so incurred. Collier on Bankr. (11th Ed.) p. 1001; Frost v. Latham & Co. (C. C.) 181 Fed. 866, 868.

## JURISDICTION OF THE BANKRUPTCY COURT.

[29-38] Petitioners contend that the jurisdiction of the bankruptcy court extends to all questions relating to the title, possession, and control of the Vadner Terrace, the Downing note and mortgage, and, in fact, to all actions which in any way affect the estate of the bankrupt, and that such jurisdiction is exclusive.

This proposition is inadmissible under the Bankruptcy Act. The

bankruptcy court has no broader powers than are conferred on it by statute. Section 2 of the act (Comp. St. § 9586) invests it "with such jurisdiction at law and in equity as will enable it to exercise original jurisdiction in bankruptcy proceedings." This jurisdiction is exclusive.

In United States Fidelity Co. v. Bray, 225 U. S. 205, at page 217, 32 Sup. Ct. 620, at page 625 (56 L. Ed. 1055), the court says:

"The jurisdiction of the bankruptcy courts in all 'proceedings in bankruptcy' is intended to be exclusive of all other courts, and that such proceedings include, among others, all matters of administration, such as the allowance, rejection, and reconsideration of claims, the reduction of the estates to money and its distribution. the determination of the preferences and priorities to be accorded to claims presented for allowance and payment in regular course, and the supervision and control of the trustees and others who are employed to assist them."

That the exclusive jurisdiction of the bankruptcy court does not extend to all suits, at law or in equity, affecting a bankrupt's estate, is apparent from section 23, which provides that the district court—

"*shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy*, between trustees as such and adverse claimants concerning the property *acquired or claimed* by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

"(b) Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, *might have brought or prosecuted* them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, except suits for the recovery of property under section sixty, subdivision b; section sixty-seven, subdivision e; and section seventy, subdivision e."

It should be noted that section 23 covers all controversies, at law and in equity, concerning property acquired or claimed by the trustee. Sections 60b, 67e, and 70e (Comp. St. §§ 9644, 9651, 9654) relate not to property which the trustee has acquired, but to such property as he claims and seeks to recover. These sections provide for the recovery of property fraudulently or preferentially transferred, which should be restored to the estate of the bankrupt and applied to the payment of his debts. In each section, for the purpose of recovery, it is provided that the court of bankruptcy and "any state court which would have had jurisdiction if bankruptcy had not intervened shall have concurrent jurisdiction."

Obviously, suits for the recovery of fraudulently or preferentially conveyed property of the bankrupt in the possession of third parties claiming adversely are not proceedings in bankruptcy, but controversies at law or in equity. Neither do they come within the provisions of section 11, authorizing a court of bankruptcy to stay a pending suit against a bankrupt upon a claim from which a discharge in bankruptcy would be a release. In re United Wireless Telegraph Co. (D. C.) 192 Fed. 238; Frost v. Latham & Co. (C. C.) 181 Fed. 866; Parker v. Black (D. C.) 143 Fed. 560; Bunch v. Smith, 116 Tenn. 201, 93 S. W. 80.

Section 17, subd. (1) (Comp. St. § 9601), provides that:

"A discharge in bankruptcy shall release a bankrupt from all his provable debts except such as * * * are * * * for alimony due or to become due, or for maintenance or support of wife or child."

Such a suit, therefore, pending in a state court, cannot be stayed subsequent to adjudication, under section 11, because it is not a provable debt. Collier on Bankr. (11th Ed.) p. 439; 7 Corpus Juris, pp. 300, 399.

Provable debts are defined in section 63 as follows:

"(a) Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him; * * * (2) due as costs taxable against an involuntary bankrupt who was at the time of the filing of the petition against him plaintiff in a cause of action which would pass to the trustee and which the trustee declines to prosecute after notice; (3) founded upon a claim for taxable costs incurred in good faith by a creditor before the filing of the petition in an action to recover a provable debt; (4) founded upon an open account, or upon a contract, express or implied; and (5) founded upon provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge. * * *

"(b) Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against the estate."

The three actions brought by Agnes Vadner were pending in the state court for a considerable time prior to the date when Vadner filed his petition in bankruptcy. Prior to that time they could not have been characterized as proceedings in bankruptcy; they were controversies at law and in equity; their essential nature was not changed in any respect by Vadner's petition.

As to suits based on claims from which a discharge in bankruptcy would operate as a release after adjudication, it is discretionary whether a stay shall be ordered by the bankruptcy court. The action to recover the Vadner Terrace and the interest in the Downing note and mortgage are not claims from which a discharge will be a release. The same is true of the action for divorce. The Utah state court had possession of the property sought to be recovered, acquired, not from the bankrupt, but from persons holding it adversely, under claim of title, from a date long prior to petition in bankruptcy. It has decided that it has jurisdiction over the persons of the defendants, and has determined issues presented in the three cases. That it should do so, and not be interfered with in so doing, is in harmony with the rule of comity. In order to avoid conflict between courts of coequal or concurrent authority, the court first acquiring jurisdiction will be allowed to pursue it to the end, provided it does not invade the exclusive jurisdiction of the bankruptcy court, and provided, further, that the cause is not removable or properly removed. In re Schmidt (D. C.) 224 Fed. 814; Davis v. Planters' Trust Co. (D. C.) 196 Fed. 970; Collier on Bankr. p. 35.

It is argued that inasmuch as the bankrupt could not have instituted an action to set aside a conveyance made by himself for a fraudulent purpose, the Utah state court could not retain jurisdiction after the intervention of the trustee in bankruptcy, because under section 23 a

trustee can bring and prosecute suits only "in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted."

This argument is without merit. It confuses jurisdiction or the power to decide with the principles on which the decision shall be made. If sound, it would be destructive of the power of the trustee to recover by suit any property fraudulently transferred by the bankrupt, because it would apply to all courts. If the bankrupt before bankruptcy had brought such an action, the court would have taken jurisdiction, and thereafter decided against him, because his participation in the fraud precluded relief. Frost v. Latham & Co. (C. C.) 181 Fed. 866, 869; Burnett v. Morris Mercantile Co. (D. C.) 91 Fed. 365.

Furthermore, the three actions now under consideration have not been stayed. Pruett, the trustee in bankruptcy, by direction of the referee, intervened in the actions in the state court; it was then the duty of that court to proceed to a determination of the questions before it. To what purpose is its concurrent jurisdiction in certain controversies recognized by the Bankruptcy Act, and the power to stay pending proceedings restricted, if its judgments, even though they do not invade the sphere of bankruptcy proceedings, are, nevertheless, to be disregarded, and a retrial had in the court of bankruptcy?

If in entering a decree of divorce, or deciding that the Vadner Terrace and the Downing note and mortgage were fraudulently transferred, the court erred, the appellate courts of Utah are the proper tribunals to which defendants should resort for relief. This court is in no sense a court of review.

The petitions of the Basic Fund Company, Phebe Vadner, Phebe Vadner and Charles S. Vadner, as executors of the last will and testament of Samuel Vadner, deceased, to intervene in the bankruptcy proceedings in order to relitigate the validity of said transfers by the bankrupt to them, and also to retry Agnes Vadner's cause of action for a divorce, must be denied; as to them, the cases are pending in the Utah state court.

Agnes R. Vadner will be permitted to enforce the lien given to her in the judgment for separate maintenance and alimony, rendered September 24, 1915, by the Third judicial district court in and for the county of Salt Lake, state of Utah. By that judgment she was awarded $125 a month for the support of herself and her children; it was rendered more than four months prior to the bankruptcy proceedings, and made a lien on the Downing note and mortgage. This lien was created by the express language of the judgment, and in pursuance of the judgment the note and mortgage were lodged with the clerk of the state court. Such a claim is not regarded as arising from any contract or business transaction, but from the marriage relation—from the legal, moral, and natural duty of a husband to support his wife and children. While it is subject to modification by the court in which it was made, it is not a debt from which a discharge in bankruptcy is a release; consequently proceedings to enforce that judgment and lien will not be stayed. Bankr. Act, § 17; Collier on Bankr. p. 430; Brand-

enburg on Bankr. (4th Ed.) § 1047; Audubon v. Shufeldt, 181 U. S. 575, 21 Sup. Ct. 735, 45 L. Ed. 1009; Dunbar v. Dunbar, 190 U. S. 340, 23 Sup. Ct. 757, 47 L. Ed. 1084.

As to Agnes R. Vadner's lien on the Vadner Terrace, recognized and defined in the judgment rendered in said state court December 4, 1917, and in the subsequent judgment of May 3, 1918, I am unable to regard it otherwise than as a lien created within four months prior to the filing of the bankrupt's petition. The motion for an order restraining Agnes R. Vadner from foreclosing this lien, or selling the Vadner Terrace, under any process or order of sale issued or issuing out of said Utah state court in any of the three actions under consideration, must be granted, and the order to that effect heretofore made will remain in full force and effect until further order of this court. The trustee, W. E. Pruett, however, is hereby directed to secure possession of the two-thirds interest in the Vadner Terrace mentioned in said equity suit No. 24286, and to make proper application therefor to said Utah court, and to its receiver, A. T. Moon. He is also authorized to intervene in any suit which Agnes Vadner has initiated, or may initiate, to foreclose her lien above mentioned against the Downing note and mortgage, and to take any other steps needful to secure for the estate of the bankrupt the residue of said note and mortgage, after satisfying Mrs. Vadner's lien and the lien of the Bankers' Trust Company.

The motion to remand the three cases numbered 21414, 22981, and 24286 is granted.

The Utah state court has decided that the Downing note and mortgage, as well as a two-thirds interest in the Vadner Terrace, belong to the bankrupt estate, which is worth about $50,000. According to the schedule of the bankrupt, substantially all his indebtedness is owing to his former wife, Agnes R. Vadner. The litigation considered in the foregoing opinion has for its purpose a settlement of the property rights of Charles and Agnes Vadner. Neither is entitled to all the property to the exclusion of the other; both have rights which the courts will endeavor to protect. Their differences should be settled between themselves, and that speedily, if either expects to save anything out of the estate.